Jasen, J.
The principal issue raised on this appeal is whether standard State vouchers, utilized for presenting claims against the State, are instruments within the meaning of section 175.35 of the Penal Law. We conclude that these vouchers are instruments for the purposes of that statute and would affirm the order of the Appellate Division sustaining convictions under section 175.35 for filing false instruments.
In early 1971, Steve Rossini was compelled to relocate his iron works business due to the impending construction of a State highway through the location of his enterprise. The State was obligated to pay for the actual, reasonable and necessary expenses entailed by the relocation. (Highway Law, § 29, subd 13-b; § 30, subd 13-b; § 347, subd 12-b.) In pursuance of its statutory authority, the Department of Transportation promulgated a series of regulations, since revised, governing payment procedures. (17 NYCRR 51.1 et seq.) These regulations provided for the reimbursement of "actual, reasonable and necessary moving expenses.” (17 NYCRR 51.5.) Estimates and bids on each phase of the move were to be obtained from generally recognized, qualified movers. (17 NYCRR 51.5 [b].) The department would review the bids and select the lowest acceptable bid. After the removal was completed, detailed, receipted bills reflecting actual costs incurred were to be submitted. However, these bills could not be in excess of the bid previously accepted. (17 NYCRR 51.5 [c].) An additional contingency allowance was provided for, to cover the cost of such miscellaneous moving expenses as license transfers, legal fees, door lettering, changes in stationery, and the cost of disconnecting and reconnecting utilities. An allowance of 5% *53 of the approved moving expense estimate was authorized. (17 NYCRR 51.5 [g].) Claims for payment were to be submitted in writing to the department, accompanied with information, evidence and executed vouchers. (17 NYCRR 51.3.)
Rossini was sent a packet of information with instructions to obtain three bids. He contacted James F. Macri, the president of Bel Air Equipment Corporation. Macri submitted a bid and obtained the two other necessary bids for Rossini. Maori’s bid, in the amount of $8,975, was the lowest bid and was accepted by the department. Although Rossini was still free to retain any other mover who would do the work for $8,975 or less, Rossini hired Macri and Bel Air to perform the work. When the job was completed, Macri directed Bel Air’s project manager, Edward Purves, to prepare an itemized bill that would equal the bid amount, $8,975. Macri submitted this bill to Rossini, knowing that Rossini would, in turn, file it with the State. Rossini prepared a standard State voucher and submitted it to the State, along with the itemized bill. Unbeknown to Rossini and Macri, State investigators had kept the move under surveillance, noting the manpower and equipment employed to accomplish the task. A comparison of the surveillance logs with the itemized bill submitted by Rossini revealed substantial inaccuracies in the itemized bill. The State did not pay the claim. Instead, Bel Air and Macri were indicted by the Grand Jury of Westchester County for the crimes of attempted grand larceny in the second degree, falsifying business records in the first degree and offering a false instrument for filing in the first degree. Both defendants were convicted of all charges. On appeal, the Appellate Division reversed the convictions for falsifying business records and dismissed the count of the indictment upon which those convictions were based, but affirmed the convictions for offering a false instrument for filing in the first degree and for attempted grand larceny.
The main issue for our consideration arises out of the conviction for offering a false instrument for filing in the first degree. The defendants contend that the standard State voucher is not an instrument and that the convictions, therefore, are legally insufficient. Section 175.35 of the Penal Law provides that the crime is committed when a person "knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision thereof * * * offers or presents it to a *54 public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.”
To begin with, the term instrument is not one susceptible to an exact, precise and inelastic definition. It is employed in many different contexts in our law and its meaning shifts, sometimes subtly, sometimes not, depending on the context. (See, e.g., Penal Law, § 170.00, subd 1; § 190.45; Uniform Commercial Code, § 3-102, subd [1], par [e]; § 3-104; Personal Property Law, § 251, subd 2; General Business Law, §§ 123, 124.) While in all cases the term serves to identify a class of paper writings, the type of document sought to be included in, or for that matter excluded from, the scope of a particular statutory enactment varies with the purpose that enactment seeks to serve. It is for this reason that the reliance appellants put upon our decisions in People v Sansanese (17 NY2d 302), and, most recently, in People v Gottlieb (36 NY2d 629), is misplaced.
In People v Sansanese, a case which arose under the somewhat broader provisions of section 2051 of the former Penal Law (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 175.30, p 314), we held that an application for a driver’s license was not an instrument. We took cognizance of accepted dictionary definitions of the term and concluded that to apply the statute to such applications would be extending criminal liability beyond the scope of the statutory mandate. (17 NY2d, at p 306.)
People v Gottlieb involved an interpretation of the present Penal Law provision, section 175.35. We held that an application for a certificate of occupancy submitted to a city building department was not an instrument. In reaching this conclusion, we were persuaded by the rationale of the court in the earlier Sansanese case. (36 NY2d, at p 631.)
As we view it, the purpose of section 175.35 is to guard against the possibility that officers of the State or its political subdivisions would act upon false or fraudulent "instruments” that had been filed with their offices in the belief that such documents were accurate and true. Section 175.35, which creates a felony level offense, requires proof of an additional element beyond the false filing; the People must establish that the defendant intended to defraud the State.
When a claim is made that a particular document is not an *55 instrument within the meaning of the statutory prohibition, the character and contents of the document must be closely analyzed. The court must not only ascertain whether the particular document falls within the literal scope of the statute but also whether the document is of a character that the mischief the statute seeks to prevent would ensue if the document were filed. Where both standards are satisfied, the document, of course, is an instrument as that term is utilized in this statute.
Applying these principles to the case before us, we conclude that the standard State voucher submitted to the Department of Transportation is, in effect, a non-negotiable draft and is, therefore, an instrument within the meaning of this section. The voucher directs that the State "pay to” Steven Rossini and Bel Air Equipment Corporation certain stated amounts. The document states that "The Dept, of Audit and Control of the State of New York is hereby authorized to make payments as a consideration for moving expenses and to draw separate checks in the full amount payable to” Rossini and Bel Air. Rossini demanded payment to him of the 5% contingency allowance and to Bel Air of the full $8,975 bid price. Rossini authorized the payment and certified that "the above bill is just, true and correct” and that "the balance is actually due and owing”.
The claims in the voucher were patently false. Had the State made the payments, it would have been defrauded of a substantial amount of money. The statute was designed to protect the State from exactly this sort of chicanery. The voucher was, in effect, a demand addressed to the State for the payment of money. It represented obligations allegedly owing to Rossini and Bel Air by the State. In holding, as we do, that this voucher is an instrument, we apply the statute to a situation it was intended to cover. Penal responsibility is not extended beyond the "fair scope” of the legislative mandate. (People v Gottlieb, 36 NY 2d 629, 632, supra; People v Sansanese, 17 NY2d 302, 306, supra.)
We are also satisfied that the delivery of the vouchers by Rossini to the representatives of the Department of Transportation constituted a filing of the instrument. Since Macri and Bel Air had this filing in mind when Bel Air’s employee was directed to prepare a fraudulent bill, the filing was properly attributed to them. There is no doubt that these defendants fully intended to defraud the State by having a false instru *56 ment submitted to the State for payment. The convictions for section 175.35 violations were, thus, properly obtained.
We have considered the other contentions advanced by the appellants, but find them unavailing. We would affirm the order of the Appellate Division.