Jack Rosenberg, J.
In this omnibus motion, the defendant Ray Sandoval seeks to obtain nine different forms of relief. This decision concerns itself solely with the application to dismiss the indictment, the other eight requested reliefs are dealt with separately.
The indictment, filed October 14, 1975, consists of five counts. It charges both defendants with the following crimes allegedly committed on October 8, 1975: (1) robbery in the first degree in forcibly stealing certain property from one John Dones, in the course of which they were armed with and used and threatened the immediate use of a dangerous instrument, "a German Shepherd dog,” in violation of subdivision 3 of section 160.15 of the Penal Law; (2) grand larceny in the third degree, stealing the same property from the same victim in violation of subdivision 5 of section 155.30 of the Penal Law; (3) criminal possession of a weapon in the fourth degree, "a German Shepherd dog,” with intent to use that weapon unlawfully against another; (4) assault in the second degree, specifically that in the course of and in furtherance of the commission and attempted commission of a felony and of the immediate flight therefrom, they caused injury to the same *371 victim named in the first and second counts, in violation of subdivision 6 of section 120.05 of the Penal Law; (5) robbery in the second degree in that they forcibly stole certain property from the same victim. In all five counts, the indictment charges that the defendants acted in concert with each other and other persons.
The major issue in this motion is raised by the first item in the motion, whether counts 1 and 3 of the indictment are valid insofar as they seek to include the term "a German Shepherd dog” in the terms "dangerous instrument” and "deadly weapon.” I hold that while the first count is valid, that a German Shepherd dog can be a "dangerous instrument”, the third count must be dismissed since a German Shepherd dog cannot be a "deadly weapon”. My holding turns on the difference in the definitions of the two terms contained in the Penal Law.
Subdivision 13 of section 10.00 of the Penal Law reads as follows: "13. 'Dangerous instrument’ means any instrument, article or substance, including a 'vehicle’ as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.” The term "instrument” is not defined in the Penal Law. Neither is "article” nor "substance.” Webster’s New International Dictionary, Unabridged ([2d ed], p 1288) has several definitions of "instrument”. The first is particularly relevant to our consideration of the legislative intent in using it in subdivision 13 of section 10.00. It reads: "That by means of which any work is performed or result is effected; a medium; means. The bold are but the instruments of the wise. Dryden.” Clearly, a large and potentially ferocious dog such as a German Shepherd trained to menace another human being, to threaten him with imminent attack upon the command of his master, another human being, and used by its master to compel another human being to yield up his valuables, becomes an instrument by means of which the divestation of ownership is effected, a "medium, means” for effectuating a robbery; he is an instrument which the victim of the threat of serious physical injury views as highly dangerous to him and under threat of which he yields up his property to the dog’s master.
This interpretation is clearly consistent with the legislative intent manifested in the balance of the statutory definition of *372 the term "dangerous instrument”. The definition uses the term "vehicle”, hardly considered by most users as a dangerous instrument. The definition recognizes that any of many highly useful and ordinarily safe instruments, animate and inanimate, for example, a vehicle such as a horse or an automobile, may, depending on "the circumstances in which it is used”, become, in the hands of one blessed with the perverse ingenuity so often characteristic of the criminal mind, a dangerous instrument being used to commit the crime of robbery. The Legislature in its definition of the term, clearly showed a recognition that a dog, so often properly characterized as man’s best friend can under certain circumstances be used by one man as another man’s worst enemy. To establish the possibility of a dog becoming a dangerous instrument, we need only refer to such cases as People v Sandgren (302 NY 331) where the Court of Appeals overturned a ruling reversing a judgment of conviction of manslaughter against the owner of dogs which had killed a boy after the owner had turned them loose on his unfenced property even though he was aware that the dogs were vicious and had previously attacked and injured or threatened several passersby. And the use of German Shepherd dogs as police defense force and guard helpers because of their ability, when trained upon command to attack, pursue and corner intruders is too well known to require proof. It is true that a diligent search for precedents has failed to disclose any previous holdings on this specific question. That may be because dogs as the faithful servants of man, are generally on the side of maintenance of law, not on the side of those who break the law. But here we have a charge that the defendant used a dog as a dangerous instrument in effectuating a robbery. Our lawmakers’ definition of that term is clearly one which includes such misuse of a dog’s allegiance to his master.
A recent decision of the Court of Appeals underlines the broad scope of the word "instrument”. In People v Bel Air Equip. Corp. (39 NY2d 48, 54), Judge Jasen, in the opinion of the court noted that the term "instrument” (the case turned on whether a written document, a voucher presented for moving expenses, was an "instrument” within the meaning of section 175.35 of the Penal Law) is not one susceptible of an "exact, precise and inelastic definition” and that the padded vouchers involved in the case before the Court of Appeals were "instrument”.
*373 Unfortunately, however, the Legislature was not as farsighted when it defined the term "deadly weapon”, the term under which Count 3 of the indictment here in question seeks to subsume the same criminally trained German Shepherd dog. Subdivision 12 of section 10.00 of the Penal Law which defines that term reads: "12. 'Deadly Weapon’ means any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged, or a switchblade knife, gravity knife, dagger, billy, blackjack, or metal knuckles.”
The foregoing definition names a series of specific weapons and when it uses the general term "weapon”, qualifies and limits it by requiring that it be "loaded” and be something from which "a shot, readily capable of producing death or other serious physical injury, may be discharged.” No matter how broadly the term "weapon” may be defined by a dictionary, it is impossible to sustain the argument that a German Shepherd dog, no matter how serious may be the physical injury he could do to another on command of his master, is includible in the statutory definitions of the term "deadly weapon”. Hence I find myself under constraint of that limited definition, to dismiss the third count. Accordingly, the motion to dismiss Counts 1, 2, 4, 5 are denied and granted as to Count 3.