THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANDREW R. TYLER, Respondent.

Second Department, April 26, 1978

**APPEARANCES OF COUNSEL**

*John F. Keenan, Deputy Attorney-General (Thomas A. Duffy, Jr.* and *Joseph Milano* of counsel), for appellant.

*Shea Gould Climenko & Casey (Milton S. Gould, Saul S. Streit* and *Richard F. Czaja* of counsel), for respondent.

## OPINION OF THE COURT

O'CONNOR, J.

### THE FACTS

In the course of an investigation then being conducted by the Special Prosecutor, the respondent, a Justice of the Supreme Court, appeared, on request, before the Extraordinary and Special Grand Jury for New York County.

One part of respondent's examination concerned his issuance of an order releasing on parole one Foster Simmons from the Rikers Island Detention Center, where he was being held in lieu of $500 bond or $200 cash bail. It is noted that young Simmons, a taxicab driver, following a dispute with his employer, had been arrested on a charge of stealing the cab he had been assigned to drive.

Because, technically, Rikers Island is part of Bronx County, the Simmons matter was transferred before the Extraordinary and Special Grand Jury for that county and respondent's New York testimony was read there. The gravamen of the offense was that the respondent knowingly issued the court order paroling Foster Simmons with knowledge that it contained a false statement (i.e., that the application before him had been made by one William C. Chance, an attorney), and in that the making and issuing of that false order constituted an unauthorized exercise of respondent's official functions and was based upon a statement which respondent knew to be false.

The respondent's testimony, in short summary, was that on a Saturday morning in August, 1973 his wife told him that Foster Simmons, the son of her friend and neighbor, Dee Simmons, had been arrested the previous evening and was then in detention at Rikers Island. His wife noted that Mrs. Simmons "says she doesn't have any money to get a lawyer." Respondent replied: "Well you get hold of Chance." William C. Chance had been respondent's law partner when respondent was in private practice. By inference, at least, it was left to Mrs. Simmons to contact Mr. Chance.

Following several phone calls to Rikers Island, respondent determined the docket number of the Simmons case, the nature of the charges pending, the amount of bail, the date when Simmons had to return to court and his prior arrest

record. Respondent denied having been informed by anyone that Simmons had been using heroin for about a year and that he was indicating withdrawal symptoms while in jail.

Respondent himself attempted to contact Mr. Chance. He was unsuccessful because Chance was engaged in weekend court in Manhattan. On the basis of the foregoing, the respondent prepared and signed an order, personally typed by him on his letterhead, releasing Foster Simmons on parole without bail and, in the preamble to that order, recited that the application before him had been made by William C. Chance, an attorney.

Respondent's wife and Mrs. Simmons took the order to Rikers Island, whereupon several telephone calls ensued between officials there and the respondent because there was "some question as to the authenticity of that document when it arrived there" and "some question as to whether the man they were speaking to on the phone was actually Supreme Court Judge Tyler".

A deputy warden, seeking to verify respondent's signature, contacted the Manhattan Criminal Court and was thus enabled to talk with Mr. Chance, who happened to be in the building. Mr. Chance stated that he knew nothing about the order or Foster Simmons and asked to speak to the women who had brought the order to Rikers Island. When Mrs. Simmons persisted in claiming that she had obtained the order from him, Mr. Chance told the warden that she was lying and demanded that he "[l]ock her up".

However, before the warden could take any action in the matter, Mr. Chance called back, stating: "I spoke to the Judge, and I apparently represent—my office apparently represents the kid." This semi-tragic comedy of embarrassing errors came to a conclusion when the warden, after verifying that he actually had been talking with Mr. Chance, ordered the release of Foster Simmons.

Chance did in fact immediately thereafter appear, without fee, for young Simmons, and actually did represent him throughout the Criminal Court proceedings. It is noted that young Simmons made every required appearance in court and finally pleaded guilty to a misdemeanor and was placed on probation for three years.

#### THE LAW

##### COUNT 1—ISSUING A FALSE CERTIFICATE

■ Section 175.40 of the Penal Law provides:

"A person is guilty of issuing a false certificate when, being a public servant authorized by law to make or issue official certificates or other official written instruments, and with intent to defraud, deceive or injure another person, he issues such an instrument, or makes the same with intent that it be issued, knowing that it contains a false statement or false information.

"Issuing a false certificate is a class E felony."

Let it first be determined: Is a bail release certificate an "instrument" within the purview of section 175.40? An almost identical statute was considered by the court in *People v Bel Air Equip. Corp.* (39 NY2d 48). There the issue presented was whether payment vouchers submitted by a moving company to the State for reimbursement constituted instruments within the meaning of section 175.35 of the Penal Law. The court said (p 54): "As we view it, the purpose of section 175.35 is to guard against the possibility that officers of the State or its political subdivisions would act upon false or fraudulent 'instruments' that had been filed with their offices in the belief that such documents were accurate and true. Section 175.35, which creates a felony level offense, requires proof of an additional element beyond the false filing; *the People must establish that the defendant intended to defraud the State.*" (Emphasis supplied.)

It is clear that the statute involved in *Bel Air* is aimed at the private individual or corporation who attempts to defraud a State official or agency, whereas the purpose of the statute here presented, section 175.40, is to prevent the improper issuance of official instruments by those holding public trust. Thus, the statutes complement each other and are actually two sides of the same coin. Hence, the conclusion is inescapable that a bail release certificate does indeed constitute an instrument within the meaning of the statute.

Let us pursue the inquiry further and go to the core, the essence of the issue before us: Does this instrument—the bail release order, as issued—violate the statute? That instrument reads as follows:

[Letterhead of]

SUPREME COURT OF THE STATE OF NEW YORK

[Seal]

Andrew R. Tyler
Justice
August 11, 1973

"RE: Foster Simmons

"Criminal Court: Bronx
"Docket: X 314741

"Charge: 155.30
165.45
165.05

"An application having been made on behalf of the defendant by William C. Chance, Jr., an Attorney, for a reduction of bail in this matter, and said application having been duly granted,

"It is Hereby Ordered that the Defendant, Foster Simmons, Be and He is Hereby Paroled to Appear at Criminal Court Bronx at Part 1C on August 14, 1973, and it is further Ordered that the Department or Correction, Rikers Island release the said defendant upon the presentation of this order."

/s/ Andrew R. Tyler
Andrew R. Tyler
Justice of the Supreme Court
First Department

Picking up the language of the statute again, it is abundantly apparent that to sustain an indictment, it is a prime and critical requirement that the evidence before the Grand Jury establish that the respondent, by issuance of the bail release order, intended to "defraud, deceive or injure another person". Without such proof the indictment must be dismissed for legal insufficiency.

■ There is an absence of such proof in the record before us. However, the prosecutor urges that, absent any direct proof of the *mens rea* required, the intent may nevertheless be readily inferred from the writing itself and from the other circumstances surrounding the issuance of the order. He hence suggests that this inference is a question of fact for the jury and that the indictment should therefore be sustained.

While the proof of a specific *mens rea* is ordinarily a question of fact for the jury, it is equally true that before any such factual issues can be submitted to the trier of the facts, the legal sufficiency of the evidence offered must first be determined as a matter of law by the court. It is basic to the law of evidence that when proof of any material element of the crime charged depends entirely upon circumstantial evidence, the guilty inference that would have to be drawn to meet the prosecutor's burden of proof must be shown to be the *only* fair and reasonable inference capable of being drawn from the evidence presented. In Richardson on Evidence (10th ed, § 148) the rule is enunciated in these words: "It may be noted, in this connection, that it is the well settled rule in New York that where the prosecution relies wholly upon circumstantial evidence to establish the guilt of the accused, the circumstances must be satisfactorily established and must be of such a character as, if true, to exclude to a moral certainty every other hypothesis except that of the accused's guilt. *People v Weiss,* 290 NY 160, 163 * * *; *People v Woltering,* 257 NY 51, 61 * * * Not only must all of the circumstances be consistent with and point to the accused's guilt, 'but they must be inconsistent with his innocence.' *People v Fitzgerald,* 156 NY 253, 258".

■ As we now turn to analyze the specific language of the statute, we borrow from the well-thought-out opinion of Trial Term, where it is said:

" 'Defraud' means to cheat or wrongfully deprive another person of some right. Can it be said that the warden of Rikers Island had some right to retain custody of Foster Simmons, out of which he was cheated by the false statement that Mr. Chance had applied for bail reduction in behalf of Simmons? In the unlikely event that some such right to retain custody can be shown to exist in behalf of the warden, the Court would suggest that Simmons had a far superior right, indeed one guaranteed by the Constitution, to be released on reasonable bail pending trial.

" 'Deceive' means to mislead, to delude, to wrongfully make another person believe something that is not true; it implies some deliberate misrepresentation of fact either to further one's own ends or to induce another person to commit some error of judgment, action or conduct, or to follow the wrong course. Can it be said that the warden of Rikers Island was deceived, in *this* context, into doing something he should not

have done? Since there was nothing improper on the warden's part in obeying a court order and in releasing Simmons from jail, it is sheer sophistry to contend that he was misled, in a criminal sense, into releasing the inmate by the false statement that Mr. Chance had made the application.

" 'Injure' needs no discussion here.

"Absent any direct proof, then, of intent to defraud or deceive, and absent also any compelling circumstances that would warrant the conclusion, as a matter of law, that the guilty inference is the only one that can be found by a trial jury to reasonably flow from the evidence herein, the Court is at a loss to understand how the present theory of a felony prosecution can be supported." (Emphasis in original.)

While it is true that CPL 530.10 requires that a bail application be made by "a defendant charged with or convicted of an offense," it would be utter fallacy to seriously suggest, under these facts, where the defendant was in jail, that his mother could not make the application for him. The sole caveat would seem to be that the issuing Judge be satisfied of the *bona fides* of the procedure and that he be convinced that the person making the application is authorized to do so on behalf of the arrested person.

It is clear that although the name of William Chance appears in the preamble to the order, the application *actually* was made personally by Mrs. Simmons on behalf of her son. The bail release order was not rendered invalid or improper by reason of the alleged false statement, as the false statement had no material bearing on its issuance.

In reaching this conclusion, let it be noted that we neither condone nor approve the manner in which respondent handled this bail application.

However, we conclude that Count 1 of the indictment was properly dismissed.

### COUNT 2—OFFICIAL MISCONDUCT

Section 195.00 of the Penal Law provides:

"A public servant is guilty of official misconduct when, with intent to obtain a benefit or to injure or deprive another person of a benefit:

"1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or

"2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

"Official misconduct is a class A misdemeanor."

In view of our determination that the respondent did not issue a false bail certificate, it cannot be said that he committed an act which constituted an unauthorized exercise of his official functions. It is conceded that the respondent failed to comply with CPL 530.30 (subd 2), which, in part, provides that "a superior court judge may not order recognizance or bail unless and until the district attorney has had an opportunity to be heard in the matter". However, the Grand Jury was never instructed that the official misconduct lay in the alleged noncompliance with this section; nor was any reference made thereto in the indictment so as to apprise the respondent that he was being charged with official misconduct on this basis. Strangely, the alleged violation of CPL 530.30 is a rather novel argument which was first advanced by the Special Prosecutor after the return of the indictment.

Count 2 alleges that the act of official misconduct was "based upon the false statement that an application for a reduction of bail had been made by William C. Chance, Jr., in behalf of the prisoner; whereas in truth and in fact, no application for a reduction of bail had been made by William C. Chance, Jr." This is precisely the same as the wording employed by the prosecutor in Count 1. There is simply no way that the foregoing could have apprised the respondent that the basis for his alleged official misconduct was in any way involved with noncompliance with CPL 530.30.

Accordingly, Trial Term properly dismissed Count 2.

We have considered the other contentions by appellant and find them to be without merit.

DAMIANI, J. P., TITONE and SUOZZI, JJ., concur.

Order of the Supreme Court, Bronx County, dated January 24, 1977, affirmed.