THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
KENNETH KASE, Appellant.

First Department, August 21, 1980

### APPEARANCES OF COUNSEL

*Joel A. Brenner* of counsel *(Greenfield & Koppelman,* attorneys), for appellant.

*Allen Alpert* of counsel *(Brian Rosner* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Defendant was a member of the Bar of this State. His name has been stricken from the roll of attorneys *(Matter of Kase,* 64 AD2d 197), by reason of his conviction in this case of two counts of making a false statement in an application for a liquor license; one count of filing a false instrument in the first degree and one count of grand larceny in the third degree.

The Last Laff is a tavern located in The Bronx. The authorities were of the impression that it was a hangout for organized crime figures. In order to obtain knowledge about their activities, they decided to purchase the tavern. In that purported "sale", which apparently was never consummated, defendant represented the owners of the Last Laff. Detective Spinelli and Sergeant Morano, both of whom were then assigned to a joint Federal-city organized crime task force were designated to make the purchase.

During the course of the negotiations defendant agreed to assist Spinelli and Morano in obtaining the approval of the Alcoholic Beverage Control Board (ABC Board) to the transfer of the tavern's liquor license from the then owners to the purchaser. On defendant's representation that he would make certain required "payments" to Regan and Weiss, investiga-

tors for the ABC Board, the policemen paid over to defendant the sum of $1,100. It is charged, and the proof was adequate to sustain the charge, that defendant gave Regan and Weiss the sum of $400, retaining the balance of $700 for himself.

Additionally, there was proof, apparently satisfactory to the jury, that the actual price to be paid by the police for the Last Laff was to be $75,000. For tax and other reasons the price reflected in the contract between the owners of the Last Laff and the policemen was to be $15,000, with the additional $60,000 to be paid "under the table". This contract, executed by the parties, was required to be and was included in the documents filed with the ABC Board by defendant.

Somehow at this point, the then Special Prosecutor Nadjari entered upon the scene. Defendant was called to the Special Prosecutor's office and informed that the proof against him was more than adequate to convict him of crimes not specifically designated. He was asked if he would "cooperate" and furnish information against his partner, then a candidate for judicial office, and a then prominent political leader. In return, the Special Prosecutor indicated that he would deal lightly with him. Initially, defendant asked for time to think the matter over. Ultimately, he rejected the offer.

Thereupon, the Special Prosecutor's office presented this matter to the New York County Grand Jury which voted a true bill. Before defendant was aware that the indictment had been voted and before it was typed and filed, an application was brought by him to preclude the Special Prosecutor from presenting the matter to the Grand Jury upon the ground that the subject matter of the investigation exceeded his jurisdiction under the order appointing him as Special Prosecutor in New York County. The court, which, similarly had not been notified that a true bill had already been voted by the Grand Jury, granted the application. Thereupon the court was notified that an indictment had been voted, but never filed; that it would be withdrawn and that the Special Prosecutor would present the matter to the Grand Jury in Bronx County, where his grant of jurisdiction was broader.

The indictment subsequently returned by the Bronx Grand Jury was thereafter dismissed upon the ground that none of the acts which formed the basis for the indictment were committed in Bronx County. The matter ultimately was referred by the Special Prosecutor to the office of the District Attorney of New York County. That office, after obtaining

permission to resubmit the matter, presented it to the Grand Jury which found the indictment here involved.

At the outset we are met with the procedural objection that the two misdemeanor counts, i.e., making a false statement in an application for a liquor license (Alcoholic Beverage Control Law, § 130, subd 2) are time barred. Under CPL 30.10 (subd 2, par [c]), a prosecution for a misdemeanor must be commenced within two years after the commission thereof. Here, the misdemeanors alleged were committed on August 1, 1974. The indictment was not found until March 22, 1977, almost nine months after the two-year period had expired. Unless some basis can be found for tolling this excess period, these two counts must be held to be time barred.

The prosecution places great reliance on *People v Kohut* (30 NY2d 183) to establish that the period during which the proceeding was pending in Bronx County must be excluded in computing the time lapse between the commission of the crime and the finding of the indictment here involved. We think this reliance misplaced for two reasons. First *Kohut (supra)* involved, basically, a question of pleading. The issue there presented was whether the indictment was required to allege the facts claimed to support the tolling of the statute. More importantly, however, the statute there involved (Code Crim Pro, § 144-a) differed in one most material aspect from the statute now before us (CPL 30.10, subd 4, par [b]). In *Kohut (supra)* the statute permitted tolling of the Statute of Limitations: "If a prosecution be commenced within the time limited therefor and, on motion or on appeal, the indictment be set aside or dismissed for want of prosecution or otherwise, or a demurrer to the indictment be allowed". In such event "the time during which the prosecution was pending shall not be computed as part of the time of the limitation prescribed for the offense". (Code Crim Pro, § 144-a.) CPL 30.10 (subd 4, par [b]) altered the statute to provide that in order for the tolling proviso to become effective, the prior prosecution must have been *lawfully* commenced. Under CPL 20.40 (subd 1), a criminal proceeding must be brought in the county in which an element of the offense was committed or in which there was an attempt or conspiracy to commit the offense. While other subdivisions of this section provide for exceptions to this rule, none are here germane. Where the requisite jurisdictional factors do not obtain, prohibition will lie to restrain the prosecution *(Matter of Steingut v Gold,* 54 AD2d 481). In such

a situation, if the matter proceeds to trial and a verdict is rendered, jeopardy does not attach because the verdict is a nullity *(People ex rel. Meyer v Warden of Nassau County Jail,* 269 NY 426, 429-430; see, also, *People v Connor,* 142 NY 130).

■ We conclude in the circumstances here presented that the Bronx County proceeding was never "lawfully" commenced because the Grand Jury of that county never had jurisdiction over the subject matter of the crimes charged. By consequence, the time during which that proceeding was pending cannot be excluded as part of the time span between the commission of the two misdemeanors and the indictment before us. These two counts are, therefore, time barred and must be dismissed.

We come then to the two felony counts. We deal first with the charge of filing a false instrument in the first degree (Penal Law, § 175.35). Defendant raises two issues with respect thereto. First, he contends that the application filed by him on behalf of the policemen to effect a transfer of the liquor license of the Last Laff from its then owners to the policemen was not such an instrument as is contemplated by the statute. Secondly, he asserts that there is here no showing of "intent to defraud the state or any political subdivision thereof" within the meaning of the law.

It is undisputed that one of the required supporting papers for the license transfer was the contract entered into between the owners of the Last Laff and the policemen. It is equally true that the contract falsely represented the price to be paid for the tavern as $15,000. In truth and in fact, agreement had been reached that the purchase price would be $75,000, $60,-000 of which was to be paid under the table.

■ Initially, the Court of Appeals, in construing the term "instrument" in the context of section 175.35 of the Penal Law gave to it a limited meaning. In *People v Sansanese* (17 NY2d 302, 306) it held that in such instance an instrument is "a 'formal or legal document in writing, such as a *contract,* deed, will, bond, or lease' (Black's Law Dictionary [4th ed., 1951, p. 941]), and as a 'legal document (as a deed, will * * *) evidencing legal rights or duties, esp. of one party to another' (Webster, Third New Int. Dictionary [1961], p. 1172)". Subsequently, the interpretation was broadened. Under this less constrictive reading of the statute "the character and contents of the document must be closely analyzed. The court must not only ascertain whether the particular document falls within

the literal scope of the statute but also whether the document is of a character that the mischief the statute seeks to prevent would ensue if the document were filed. When both standards are satisfied, the document, of course, is an instrument as that term is utilized in this statute" *(People v Bel Air Equip. Corp.,* 39 NY2d 48, 55). Whichever be the definition here employed it is plain that the contract was an instrument. It was a formal legal document defining the legal rights and duties of the parties. It also fell within the literal scope of section 175.35 of the Penal Law and was of a character that the mischief which the statute sought to prevent would flow in the wake of its filing. Thus, within the meaning of the statute, it was "a written instrument" containing "a false statement or false information" which was "filed with, registered or recorded" in the office of the ABC Board.

■ The second issue raised by the defendant in connection with that count is that there has been no showing of an intent to defraud the State or any subdivision thereof. Of the cases cited by defendant two *(People v Bel Air Equip. Corp.,* 39 NY2d 48, *supra; People v Orchard,* 90 Misc 2d 1011) deal specifically with this question. In *Bel Air (supra)* the subject matter of the litigation was a fraud attempted to be practiced which, had it succeeded, would have resulted in a theft of moneys from the State. In *Orchard (supra),* the contention was the defendant had filed a claim in the Small Claims Part of the City Court of Poughkeepsie bottomed upon an instrument, allegedly false. From these cases defendant seeks to draw the broad inference that only instruments from which flow pecuniary or potential pecuniary loss to the State or political subdivisions thereof fall within the prohibition of the statute. We cannot agree with this conclusion. The Federal rule has long been to the contrary *(Hammerschmidt v United States,* 265 US 182; *Haas v Henkel,* 216 US 462; *United States v Peltz,* 433 F2d 48). "It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention" *(Hammerschmidt v United States,* 265 US 182, 188, *supra).* We are in accord with this statement of the rule. There are few responsibilities of government more important than the obligation faithfully to carry out its own law. Whoever intentionally files a false statement with a public office or public

servant for the purpose of frustrating the State's power to fulfill this responsibility, violates the statute. Hence, we sustain the validity of the conviction on this count.

■ Both Regan and Weiss testified for the prosecution. The trial court held that they were accomplices, as a matter of law, and charged the jury accordingly. In connection with the charge of grand larceny in the third degree the jury sent a note to the court asking whether corroboration could be found from evidence of their general credibility. The court did not specifically answer the question. It charged, generally, that corroboration could be found in evidence from any other sources; that what was required was evidence from any source which would reasonably satisfy them that the two were telling the truth. While this supplemental charge was correct as far as it went, it did not answer the question posed by the jury. We have recently held that when "the jury pinpoints their lack of understanding they are entitled to something more than that which led to their original confusion. They should have been instructed on the precise subject upon which they manifested their doubt" (Schwabach v Beth Israel Med. Center, 72 AD2d 308, 312). This was not done here. Accordingly, we think a retrial on this count is required.

We have examined the other issues presented by defendant and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (POLSKY, J.), rendered May 25, 1978 which convicted defendant of grand larceny in the third degree, offering a false instrument for filing in the first degree and two counts of making a false statement in an application for a liquor license, modified to the extent of reversing the conviction for grand larceny in the third degree, on the law, and remanding that count for a new trial and reversing and dismissing, on the law, the two counts of making a false statement in an application for a liquor license and otherwise affirming the judgment.

MARKEWICH, J. P., SILVERMAN, BLOOM and CARRO, JJ., concur.

Judgment, Supreme Court, New York County, rendered on May 25, 1978, modified to the extent of reversing the conviction for grand larceny in the third degree, on the law, and remanding that count for a new trial, and reversing and dismissing, on the law, the two counts of making a false

statement in an application for a liquor license and otherwise affirming the judgment.