■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOWARD SCHWARTZ, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN FINKELSTEIN, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JON BELKIN, Appellant. [800 NYS2d 152]—

Judgment, Supreme Court, New York County (Bernard J. Fried, J.), rendered December 2, 2002, convicting defendant Howard Schwartz, after a jury trial, of scheme to defraud in the first degree, falsifying business records in the first degree, and five counts of securities fraud, and sentencing him to an aggregate term of 4 to 12 years and imposing an aggregate fine of $25,000, unanimously modified, on the law, to the extent of vacating the conviction for falsifying business records and, on the facts, to the extent of vacating the convictions for securities fraud with respect to Technical Chemicals and Products and with respect to Innovir Laboratories, and dismissing those counts of the indictment, and otherwise affirmed. This matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).

Judgment, same court and Justice, rendered December 2, 2002, convicting defendant Steven Finkelstein, after a jury trial, of scheme to defraud in the first degree, falsifying business records in the first degree, and two counts of securities fraud, and sentencing him to an aggregate term of $2^2/_3$ to 8 years and imposing an aggregate fine of $10,000, unanimously modified,

on the law, to the extent of vacating the conviction for falsifying business records and dismissing that count of the indictment, and otherwise affirmed.

Judgment, same court and Justice, rendered October 25, 2002, convicting defendant Jon Belkin, after a jury trial, of scheme to defraud in the first degree, and sentencing him to a term of 1⅓ to 4 years and imposing a fine of $80,000, unanimously affirmed. This matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).

Except as indicated, the verdict as to each defendant is based on legally sufficient evidence and is not against the weight of the evidence (*see e.g. People v Sala*, 95 NY2d 254, 260 [2000]). There is no basis for disturbing the jury's determinations concerning credibility, including its evaluation of the weight to be given to the testimony of cooperating witnesses (*see People v Gaimari*, 176 NY 84, 94 [1903]).

The falsifying business records count must be dismissed as against Schwartz and Finkelstein because New York County lacked geographical jurisdiction (*see* CPL 20.40 [1]) and because the consulting agreement between defendants' firm, Meyers Pollock Robbins (MPR), and Holly Holdings was not a business record (*see* Penal Law § 175.00 [2]; *People v Papatonis*, 243 AD2d 898, 900-901 [1997]; *People v Bel Air Equip. Corp.*, 46 AD2d 773, 774 [1974], *affd* 39 NY2d 48 [1976]). The contract was signed in Florida on behalf of MPR and in Pennsylvania on behalf of Holly Holdings, and the meeting to negotiate the agreement took place in Nassau County. The fact that the agreement lists MPR's address as One World Trade Center does not constitute an element of falsifying business records, and there is no evidence that the Manhattan-based lawyer who prepared the agreement knew it to be false.

Schwartz's convictions for securities fraud (General Business Law § 352-c [5]) with respect to Technical Chemical and Innovir are against the weight of the evidence. While one partner of the Melville branch testified that he offered a commission of more than five percent on Technical Chemical, another partner testified that he offered his brokers no special incentives to sell that stock, and the sales manager of the Melville office testified that he did not receive any special commissions in regard to this stock. Moreover, the average commission reported to Bear Stearns on Technical Chemical was only 2.59%. Thus, MPR appears to have been well within the NASD commission guidelines with respect to this stock. The fact that MPR did not tell its customers about its agreement with Technical Chemical does not, by itself, evidence intent to defraud. MPR's own compli-

ance manual did not require investment banking agreements to be disclosed. As to Innovir, while the strike price on some of the warrants was low, the warrants were MPR's sole compensation under the agreement. It is not unusual for companies, especially start-up companies, to compensate their investment bankers with warrants. Since Schwartz and Finkelstein provided the services listed in the agreement, it was not a sham. As for the blocks of stock purchased at below-market rates, no testimony quantified how much of a discount MPR received. There are legitimate reasons for selling blocks of stock at a discount; notably, it is difficult to sell many shares of a small company without depressing the price. While one of the Melville brokers received high commissions for selling Innovir, there is no evidence that Schwartz received such commissions. Finally, since Schwartz invested his own parents' retirement money in Innovir, we conclude that he did not think it was a worthless stock.

We reject Belkin's sufficiency arguments. Although the court should have instructed the jury that a certain sales assistant was an accomplice as a matter of law (*see People v Adams*, 307 AD2d 475 [2003], *lv denied* 1 NY3d 566 [2003]), the error was harmless in light of extensive corroborating evidence (*see People v Chi Yuan Hwang*, 2 AD3d 245 [2003], *lv denied* 2 NY3d 738 [2004]). The nonaccomplice testimony received from the custodian of TWA records and from the receptionist/administrative assistant at the 5 Hanover Square office, together with the documentary evidence (telephone and Federal Express records), corroborated the accomplice testimony and tended to connect Belkin with the scheme to defraud (*see* CPL 60.22 [1]; *People v Besser*, 96 NY2d 136, 143-144 [2001]).

The scheme to defraud count was not duplicitous. While the various branches of MPR operated with a high degree of autonomy, the main office—which supplied the trading desk, the connection to Bear Stearns (the clearing house), and the capital required by NASD rules—was a necessary part of the scheme to defraud. Furthermore, at a fundamental level, both the 5 Hanover Square office (where Belkin worked) and the Melville office (of which Schwartz and Finkelstein were partners) engaged in the same deceptive technique: neither told its customers that it was receiving extra compensation to promote certain stocks. Therefore, there was a single, overarching scheme to defraud (*see People v First Meridian Planning Corp.*, 86 NY2d 608, 617-618 [1995]).

Since they agreed to accept a joint trial, Schwartz and Finkelstein waived their current argument that they were unduly prejudiced by being tried jointly with Belkin (*see People v*

*White*, 53 NY2d 721, 723 [1981]), and we decline to review the claim in the interest of justice. Were we to entertain the argument, we would find that the court providently exercised its discretion (*see People v Bornholdt*, 33 NY2d 75, 87 [1973], *cert denied sub nom. Victory v New York*, 416 US 905 [1974]). We note that 60 witnesses testified in the three-month trial and that the defenses were not in irreconcilable conflict (*see People v Mahboubian*, 74 NY2d 174, 183-184 [1989]).

The court providently exercised its discretion in accepting the former president of MPR as an expert in SEC filings (*see generally People v Brown*, 97 NY2d 500, 505 [2002]). This witness was a certified public accountant, held various securities licenses, and had about 15 years' experience in analyzing public filings. He had been a chief financial officer, responsible for all regulatory reporting and filings with the SEC and the New York Stock Exchange. He testified as to matters that were the proper subject of expert testimony (*see People v Lee*, 96 NY2d 157, 162 [2001]), and he was properly permitted to testify from certain business summaries (*see R & I Elecs. v Neuman*, 81 AD2d 832, 833 [1981], *lv denied* 54 NY2d 605 [1981]). The court's frequent and detailed instructions obviated the danger that qualifying him as an expert witness in one area would bolster his credibility as a fact witness in other areas.

The court also providently exercised its discretion in permitting a law school professor to give expert testimony on securities laws and regulations (*see e.g. United States v Bilzerian*, 926 F2d 1285, 1294 [2d Cir 1991], *cert denied* 502 US 813 [1991] ["Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts"]; *People v A.S. Goldmen, Inc.*, 9 AD3d 283, 285 [2004], *lv denied* 3 NY3d 703 [2004]; *People v Lurie*, 249 AD2d 119, 122 [1998], *lv denied* 92 NY2d 900 [1998]). The witness was neither offered nor accepted as an expert on the various New York state statutes at issue in this case, nor did he testify as to the ultimate issues before the jury. His testimony did not misstate the law.

By referring to the trial record, the court properly responded to a jury note asking whether market making must be disclosed to customers. Factual questions were presented as to whether MPR engaged in market making (*see C.R.A. Realty Corp. v Tri-South Invs.*, 568 F Supp 1190, 1191-1192 [SD NY 1983], *affd* 738 F2d 73 [2d Cir 1984]) and whether it was required to disclose that fact (*Chasins v Smith, Barney & Co.*, 438 F2d 1167, 1172 [2d Cir 1970]; *see also Zweig v Hearst Corp.*, 594 F2d 1261 [9th Cir 1979]). Thus, the court responded appropriately by

reading back the pertinent testimony of expert and other witnesses and by submitting these issues for the jury's determination on the evidence (*see* P*eople v Steinberg*, 79 NY2d 673, 685 [1992]; *People v Wosu*, 213 AD2d 967, 968-969 [1995], *affd* 87 NY2d 935 [1996]). As a general principle, the weight to be accorded expert testimony is a matter for the jury (*see Windisch v Weiman*, 161 AD2d 433, 437 [1990]).

The consecutive sentences for securities fraud are not illegal, nor do they violate double jeopardy. Each Martin Act violation involves a separate security and is thus a separate offense (*see generally* Penal Law § 70.25 [2]; *Blockburger v United States*, 284 US 299, 304 [1932]). We note that the individual securities fraud sentences are concurrent with the overall scheme to defraud sentence (*see People v Sanchez*, 195 AD2d 578, 580 [1993], *mod on other grounds* 84 NY2d 440 [1994]).

We perceive no basis for reducing the sentences upon the valid convictions. We have considered and rejected defendants' remaining arguments. Concur—Tom, J.P., Mazzarelli, Friedman, Gonzalez and Catterson, JJ.