OPINION OF THE COURT
Steven L. Barrett, J.
Defendant, Police Officer Michael Ackermann, is charged in an eight-count indictment with falsifying business records in the first and second degrees, tampering with public records in the first and second degrees, offering a false instrument for filing in the first and second degrees, official misconduct and making a punishable false written statement. The charges all emanate from allegedly false statements made by defendant in a criminal complaint that he signed on October 19, 2012, which charged New York Times photographer, Robert Stolarik, with resisting arrest, obstructing governmental administration and other related charges. The charges against Stolarik were based upon an incident, which took place on August 4, 2012, and resulted in Stolarik’s arrest and prosecution. In the criminal complaint against Stolarik, defendant was the deponent and stated that while he and three other officers were attempting to place a juvenile under arrest, Stolarik “approached him and repeatedly took pictures with a camera discharging a bright flash which temporarily impeded his sight and control over the juvenile.” Defendant further stated that, upon attempting to place Stolarik under arrest, Stolarik pushed his camera into defendant’s face and repeatedly pulled his arm away from defendant and refused to be handcuffed.
After an investigation into the August 4, 2012 incident that resulted in Stolarik’s arrest, the Bronx County District Attorney’s Office moved to dismiss the criminal complaint against Stolarik, and presented evidence against defendant to the grand *628 jury.[1] Based upon the testimony of Stolarik and others regarding the August 4, 2012 incident that contradicted defendant’s statements in the criminal complaint against Stolarik, as well as evidence that Stolarik’s camera did not have a built-in flash setting and that Stolarik was not in possession of an external flash attachment when arrested, the grand jury voted a true bill against defendant containing the above-stated charges.
After inspecting the grand jury minutes, the court finds, with the exception of counts 3 and 4 charging tampering with public records to which the People consent to dismissal, that the evidence before the grand jury was legally sufficient in all respects to establish each count and that the instructions to the grand jury were proper. With respect to defendant’s specific claims regarding each of the counts, for the following reasons, the court finds that each claim is meritless.
Initially, defendant moves to dismiss counts 1 through 7 of the indictment on the ground that the form notice method of verification used to verify the criminal complaint against Stolarik limits the instant prosecution exclusively to the eighth count of the indictment, which charges defendant with the class A misdemeanor of making a punishable false written statement (Penal Law § 210.45).[2] This claim is unavailing. CPL 100.30 simply sets forth the five different ways in which an accusatory instrument may be verified. (See Peter Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 100.30.) The purpose of the requirement that a criminal complaint be verified is to assure a measure of reliability regarding the contents of the complaint by alerting a deponent that he has a duty to make truthful statements and to provide notice that he faces potential criminal liability if he fails to do so. (See Matter of Neftali D., 85 NY2d 631, 635-636 [1995].) Specifically, with respect to the form notice method of verification, the purpose of this provision is twofold: (1) to provide a convenient method of assuring the truthfulness of documents without resort to the often cumbersome procedure of requiring an oath, and (2) to alert the signer of the statement to the real and significant possibility of criminal prosecution should the informa *629 tion be proved to be false. (See People v Sullivan, 56 NY2d 378, 383 [1982], citing Governor’s Mem approving L 1964, ch 645, 1964 NY Legis Ann at 517-518.) The proposition posited by defendant, that by utilizing the form notice method of verification the prosecution is somehow limited to charging defendant solely with making a punishable false written statement (the provision expressly cited in the verification) and that defendant cannot be charged with additional crimes based upon any such false statements, is unsupported by either the language of the statute, the purpose of the statute, or the case law regarding the statute.[3] Simply put, the mere fact that the complaint was verified utilizing the form notice method is of no moment with respect to the panoply of charges that could be brought against defendant.
Equally unavailing are defendant’s specific claims for dismissal of the individual counts. With respect to the first two counts of the indictment, the evidence established sufficiently all of the elements of falsifying business records in the first and second degrees. Contrary to defendant’s contention, the criminal complaint is an official court record, and, as such, falls squarely within the definition of a business record. (See Penal Law § 175.00 [2]; 22 NYCRR 104.1.) Moreover, the evidence adduced in the grand jury established that when he signed the criminal complaint against Stolarik, defendant intended to conceal the fact that his arrest of Stolarik was without probable cause. Thus, there was sufficient evidence that defendant intended to conceal his commission of the crime of unlawful imprisonment in the second degree when he signed the criminal complaint containing allegedly false statements. Having established all of the elements of falsifying business records in the first and second degrees, defendant’s motion to dismiss these counts is denied. With respect to counts 5 and 6, which charge defendant with offering a false instrument for filing in the first and second degrees, the evidence clearly established that the criminal complaint falls squarely within the definition of a “written instrument.” (See Penal Law § 175.00 [3]; People v Bel Air Equip. Corp., 39 NY2d 48, 54-55 [1976].) Finally, the evidence established sufficiently all of the elements of official misconduct. As stated above, the evidence presented to the *630 grand jury established that defendant’s arrest of Stolarik was without probable cause and his signing of the criminal complaint lodged against Stolarik was done to cover up his actions in order to avoid internal disciplinary charges for his conduct. Thus, the evidence established that defendant intended to obtain a benefit for himself. Moreover, the evidence also established that defendant intended to deprive another person of a benefit, in that defendant’s arrest of Stolarik, and the subsequent criminal prosecution of Stolarik that resulted from the arrest, deprived Stolarik of his personal liberty. Consequently, there is legally sufficient evidence establishing all of the elements of official misconduct. (See Penal Law § 10.00 [17]; People v Feerick, 93 NY2d 433, 449 [1999] [retrieval of lost police radio which could have subjected defendants to scorn, ridicule, or possible discipline constitutes a benefit under official misconduct statute].)
Defendant’s motion seeking a Kastigar hearing is denied. On August 22, 2012, defendant testified at a hearing conducted by the Internal Affairs Bureau (LAB) of the NYPD pursuant to Patrol Guide § 206-13.[4] At the hearing, defendant was informed that if he made any statements, neither his statements nor any information or evidence gained by reason of such statements could be used against him in any subsequent criminal proceedings. No member of the Bronx County District Attorney’s Office (BxDAO) attended the hearing. Defendant now requests a pretrial hearing, pursuant to Kastigar v United States (406 US 441 [1972]), to ensure that his immunized statements and fruits derived therefrom were not used in securing the instant indictment. (See affirmation of Howard Sterinbach, Esq. in support of defendant’s motion at 16, ¶ 44.) Having reviewed the evidence presented to the grand jury and the affirmation of Assistant District Attorney (ADA) Osman Abbasi submitted in support of the People’s response to the instant motion, the court finds that the People have satisfied their burden of establishing that defendant’s immunized statement or any evidence derived from it was not used in the grand jury, and that the evidence that was used to obtain the instant indictment was derived from sources entirely independent of defendant’s immunized statement.
On August 22, 2012, at the administrative hearing held pursuant to Patrol Guide § 206-13, defendant was represented by counsel and he gave his version of what transpired during the *631 August 4, 2012 incident involving Robert Stolarik. Defendant’s hearing testimony mirrored the statements he subsequently made in the October 19, 2012 criminal complaint lodged against Stolarik — both his hearing testimony and the complaint included defendant’s claim that Stolarik used flash photography that interfered with his arrest of a juvenile and that Stolarik resisted arrest. The People concede that sometime after being assigned to this case in December 2012, ADA Robert Caliendo of the Rackets Bureau reviewed defendant’s immunized statement.[5] {See affirmation of ADA Osman Abbasi at 10, ¶ 29.) On February 4, 2013, ADA Caliendo interviewed Stolarik and first learned that the camera Stolarik used on August 4, 2012 did not have a built-in flash setting and that Stolarik had not been in possession of an external flash attachment that evening. After his interview of Stolarik, ADA Caliendo determined that defendant’s preparation and signing of the criminal complaint against Stolarik was a possible criminal act. Caliendo then sealed his copy of defendant’s immunized statement and gave it to ADA Thomas Leahy, who was then the Chief of Investigations of the BxDAO.[6] {See affirmation of Osman Abbasi at 11, ¶ 31.) On March 6, 2013, with his counsel present, defendant signed a proffer agreement and was interviewed by ADA Caliendo. Defendant again repeated his narrative of the events of August 4, 2012, which included Stolarik having taken photographs with a camera having a flash, impeding his arrest of the juvenile. The case was then presented to the grand jury. The grand jury presentation consisted of Stolarik’s testimony and that of another police officer who was at the scene at the time of the arrest of the juvenile, and the introduction of testimony and evidence regarding Stolarik’s camera’s lack of flash capability. In addition, the criminal complaint lodged against Stolarik was received in evidence.
Based upon the court’s review of the grand jury presentation and ADA Abbasi’s affirmation, it is readily apparent that defendant’s immunized statement was not offered into evidence and that no direct or indirect reference to that statement was made by any of the witnesses that testified in the grand jury. *632 Indeed, the grand jury was never made aware of the statement’s existence. It is also apparent that none of the witnesses who testified in the grand jury was exposed to defendant’s immunized testimony and that the People did not learn the names of the witnesses who testified from defendant’s immunized statement. Moreover, the People have shown an independent source for each of the witnesses who testified and all of the evidence that was adduced. (See People’s mem of law at 51-57.)
Thus, the record compels the conclusion that the People established by a fair preponderance of the credible evidence that defendant’s immunized statement was not used to secure the indictment and that the evidence presented to the grand jury had a source independent of defendant’s testimony. (See People v Kronberg, 243 AD2d 132, 148 [1st Dept 1998] [People need show only that it is more likely than not that the evidence had a source independent of the immunized testimony].) Because defendant has failed to controvert that showing, a Kastigar hearing is not required.[7] (See United States v Byrd, 765 F2d 1524, 1533 [11th Cir 1985] [.Kastigar hearing is unnecessary where the prosecution has submitted sufficient proof to the court for in camera review in advance of trial].) Accordingly, defendant’s motion seeking a Kastigar hearing is denied.
On consent of the People, defendant’s motion seeking a Wade hearing is granted.

. On March 26, 2013, the criminal complaint against Stolarik was dismissed.

. Pursuant to CPL 100.30 (1) (d), typed on the complaint just above defendant’s signature in all capital letters is the following warning: “false statements made herein are punishable as a Class A misdemeanor pursuant to PL 210.45.”

. None of the cases cited by defendant in his motion papers and in his reply stand for the proposition that the form notice requirement limits the People to charging defendant exclusively with having violated Penal Law § 210.45.

. IAB had opened an investigation based upon Stolarik’s claim that he had been injured while being taken into police custody and that excessive force had been used to effectuate his arrest.

. The People aver that no ADA, other than ADA Caliendo, reviewed defendant’s immunized statement.

. The People aver that ADA Leahy unsealed and reviewed defendant’s immunized statement. After doing so, ADA Leahy resealed it, and the statement never left his possession until he submitted it to the court to examine in camera. The People further aver that ADA Leahy has not spoken to ADA Caliendo or ADA Abbasi about the contents of the statement.

. Although it created a needless potential problem and it would have been better practice to have an ADA other than ADA Caliendo present this case to the grand jury, the indictment is not fatally tainted based on ADA Caliendo’s exposure to defendant’s immunized statement. (See People v Corrigan, 80 NY2d 326, 332 [1992] [Court finds no Kastigar violation, but admonished prosecution that possession of an immunized statement is a practice to be avoided]; People v Feerick, 241 AD2d 126, 135 [1st Dept 1998], affd 93 NY2d 433 [1999] [the central inquiry with respect to whether a Kastigar violation has occurred is whether the prosecution made any use whatsoever of a defendant’s immunized testimony, not whether it had access to it].) This is especially true here because defendant repeated the substance of his immunized statement to prosecutors on at least two separate occasions after the August 22, 2012 administrative hearing. Thus, defendant’s immunized statement added nothing to the People’s knowledge of the case, and any error in allowing ADA Caliendo to present the case to the grand jury is harmless. It also should be noted that ADA Caliendo is no longer employed by the BxDAO and therefore will not be involved in any further prosecution of this case.