OPINION OF THE COURT
Steven L. Barrett, J.
The primary issue the court once again is called upon to consider, in the context of a defendant’s motion to inspect the grand jury minutes and to dismiss the indictment, is whether a police officer’s malfeasance rises to the level of official misconduct.[1] For the following reasons, the court finds that the evidence presented to the grand jury established that defendant’s conduct clearly crossed the line that separates a noncriminal serious error in judgment, which could be properly addressed in a disciplinary forum, from those actions that warrant criminal charges.
Under indictment No. 51/17, defendant has been indicted and charged with five misdemeanors—one count of official misconduct and four counts related to his driving while intoxicated or impaired.[2] The evidence presented to the grand jury established in relevant part that on December 8, 2016, defendant, a New York City police officer assigned to the 52nd Precinct, was scheduled to work the midnight to 8:00 a.m. tour. Defendant reported to work late and missed roll call. When *322 finally he arrived at work, defendant was assigned to work with Police Officer Juan Rivera, a rookie cop with five months’ experience. The first call that defendant and Officer Rivera responded to was a dispute between two parties at 3901 Webster Avenue, apartment B5, which was approximately one fifth of a mile from the 52nd Precinct station house. Defendant drove to the location and Rivera was the passenger. Defendant and Rivera arrived at the location, proceeded to apartment B5, listened outside the apartment door and heard loud music. The officers knocked on the door and Dimitris Jiminez, a 22 year old male, opened it. After a brief conversation with defendant, Jiminez complied with defendant’s request to turn down the music and then closed the door to the apartment.
Defendant and Rivera then waited in the hallway outside apartment B5 and ascertained that the music volume had been lowered. After approximately five minutes, Rivera asked defendant why they were still waiting in the hallway. Defendant did not respond. Defendant was leaning against the wall with his arm against the doorframe of the apartment and his face appeared flushed. Jiminez, who had been looking out the peephole of his apartment door, saw that the two officers were still there despite his having turned down the music, opened the apartment door, and asked the officers why they were still there. Defendant strode over to the doorway and asked Jimi-nez whether he had a problem. Defendant then placed his body across the threshold of the apartment and wedged his foot in the door preventing Jiminez from closing the door.
Defendant remained in this position in the doorway for over 20 minutes, while arguing with Jiminez and the other occupants of the apartment and preventing them from leaving the apartment. Jiminez detected the odor of alcohol on defendant’s breath and that his speech was slurred and one of the occupants of the apartment called 911. Jiminez also asked Rivera to call a supervisor. Instead of calling for a supervisor, defendant attempted to radio a request for additional units. However, because defendant’s speech was slurred and he was not able to clearly express why he wanted additional units, Rivera got on the radio and requested a supervisor and additional units. According to Rivera, defendant was unsteady on his feet, his face was flushed and his eyes appeared glassy and spaced out.
In response to Rivera’s radio request, Sergeant Armando Colon, the precinct patrol supervisor for the midnight tour, arrived at the second floor landing and observed defendant with *323 his foot in the door to apartment B5. Colon spoke to both Rivera and defendant and observed that defendant’s eyes appeared glassy, his face flushed, and his breath smelled of alcohol. Colon directed defendant to take his foot out of the door and to go downstairs. Colon observed defendant swaying as he went down the stairs. After speaking to the precinct desk sergeant, Gabriel Herbert, and believing that defendant was intoxicated, Colon directed defendant and Rivera to return to the 52nd Precinct station house.
Defendant drove back to the station house and Rivera was the passenger.[3] At the precinct, Sergeant Herbert and Captain Joseph Tompkins, the duty captain for the Bronx that morning who had been called to the precinct, observed that defendant’s eyes appeared glassy, that his face appeared flush and that his breath smelled of alcohol. Tompkins asked defendant if he had been drinking and defendant stated in sum and substance that he had his last drink at 5:00 p.m. and that he had been drinking wine with his wife during dinner. Tompkins believed defendant was intoxicated and unfit for duty and asked him for his firearm. Defendant, through his union representative, declined to take a field breath test. In addition, defendant was brought to the 45th Precinct for a breathalyzer test, but the testing unit refused to perform the test purportedly because defendant had not yet been arrested.
The evidence presented to the grand jury clearly established that on December 8, 2016, defendant not only reported to work in an intoxicated condition, but that he proceeded to leave the station house, drove a police vehicle, and responded in a bizarre and aberrational manner to a call involving what appeared to be a mere noise complaint. These actions incontrovertibly established all of the elements of the crime of official misconduct: (1) defendant’s actions related to his duties as a police officer; (2) defendant’s actions were an unauthorized exercise of his official functions as a police officer; (3) defendant knew his actions were unauthorized; and (4) defendant’s actions were undertaken with the intent to deprive another person of a benefit. (See Penal Law § 195.00.) With respect to the third element’s mens rea requirement of knowledge, this case presents allegations that are distinguishable from Becker, where this court found the lack of a specific departmental rule or regulation prohibiting the videotaping of an arrestee for private sat *324 isfaction to be a salient factor that negated the defendant police officer’s knowledge of the wrongfulness of his actions. Here, the New York City Police Department (NYPD) Patrol Guide specifically provides that police officers must “[b]e fit for duty at all times, except when on sick report,” and must “not consume intoxicants to the extent that [he or she] becomes unfit for duty.” (See Patrol Guide, Procedure No. 203-04.) With respect to the fourth element’s mens rea requirement of intent, the evidence established that defendant acted with the intent to deprive his partner, his fellow police officers, the occupants of apartment B5, and the rest of the citizens residing in the 52nd Precinct of the benefit of a sober police officer who is paid to protect and serve the public in a way that does not dishonor the badge.
Defendant admits that his actions were “incredibly stupid” serious errors in judgment, but argues that they should be handled, exclusively, internally by the NYPD and defendant further analogizes his behavior to a prosecutor who drank a couple of beers at lunch and returned to work afterwards. This argument and analogy do not withstand scrutiny. Unique dangers are posed by an on-duty, intoxicated police officer who carries a loaded firearm, may be called upon to drive at high speed through crowded streets, and may be called upon to exercise split-second judgments involving fast-paced, evolving situations that can result in life or death.[4] Because, as alleged in the grand jury, defendant’s actions constituted a flagrant, significant, and intentional abuse of authority by someone empowered to enforce the law rather than a mere serious error in judgment, the court finds that they properly fall within the ambit of the crime of official misconduct, and dismissal of the charge is hereby denied. (See People v Feerick, 93 NY2d 433, 445, 448 [1999].)
Moreover, the People presented legally sufficient evidence with respect to the counts charging defendant with driving while intoxicated or impaired. The prima facie evidence with respect to these charges included the testimony of four police officers, including a captain and two sergeants, all of whom *325 were trained in the detection of the signs of intoxication, and all of whom concluded that defendant was intoxicated. Thus, for purposes of a legal sufficiency motion, the fact that the evidence did not include field breath test results, breathalyzer test results, field coordination test results, or any evidence that defendant drove recklessly or violated any traffic laws is of no moment.
Defendant’s numerous other claims regarding the grand jury proceedings are unavailing as the court has inspected the grand jury minutes and finds that the instructions to the grand jury were proper and that there were no procedural irregularities that impaired the integrity of the grand jury. With respect to defendant’s claim that the indictment is facially defective, each count tracks the statutory language of the underlying charge and the People have also provided defendant with a bill of particulars detailing the actions attributable to defendant; thus, defendant has been provided with adequate notice of the nature of the charges to permit him to prepare a defense. (See CPL 200.50 [7]; People v Iannone, 45 NY2d 589, 599 [1978].) Likewise, based upon the nature of the crimes charged, the 3V2 hour time frame provided by the People provides defendant with sufficient notice of when the crimes were allegedly committed. (See CPL 200.50 [6]; People v Watt, 81 NY2d 772 [1993].)
On consent of the People, defendant’s motion seeking a Huntley hearing is granted. Said hearing is to include a determination as to whether defendant’s statements made to police officials were compelled due to an explicit or implicit threat of termination of employment and therefore entitle defendant to use and derivative use immunity with respect to said statements. (See Garrity v New Jersey, 385 US 493, 498 [1967]; People v Grabowski, 50 Misc 3d 186 [Sup Ct, Bronx County 2015].) Defendant’s motion to dismiss based upon the introduction to the grand jury of any immunized statements or for a Kastigar hearing is held in abeyance pending the outcome of the Huntley hearing.

. The court has previously addressed this issue in People v Ackermann (44 Misc 3d 626 [Sup Ct, Bronx County 2014] [official misconduct charge upheld where evidence presented to the grand jury established that defendant police officer falsely arrested and signed a criminal complaint charging a New York Times photographer with resisting arrest and obstructing governmental administration]), and People v Becker (42 Misc 3d 1201 [A], 2013 NY Slip Op 52142[U] [Sup Ct, Bronx County 2013] [official misconduct charge dismissed where evidence presented to the grand jury established that defendant police officer used his personal cell phone to surreptitiously videotape a young female who had been arrested for driving while intoxicated]).

. Although indictments most frequently result from the submission of felony charges to a grand jury, pursuant to CPL 190.55 (2) (c), the District Attorney has discretion to submit to the grand jury “any available evidence concerning an offense prosecutable in the courts of the county, or concerning misconduct, nonfeasance or neglect in public office by a public servant, whether criminal or otherwise.”

. Both Colon and Rivera admitted it was a mistake to allow defendant to drive back to the station house given defendant’s condition.

. The court offers no opinion as to whether the official misconduct charge would have been sustained had defendant never left the locker room. As to whether a prosecutor, judge or other government lawyer who returns to work in an intoxicated condition is subject to criminal liability, charging such a public servant with official misconduct under certain circumstances is not as “far-fetched” or “ludicrous” as defendant suggests.