2015 S.D. 12

**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Eugene Herman PAULSON a/k/a Herman Eugene Paulson, Defendant and Appellant.**

No. 27043.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2015.

Decided March 11, 2015.

Marty J. Jackley, Attorney General, Kelly Marnette, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Brad A. Schreiber, The Schreiber Law Firm, Prof., LLC, Pierre, South Dakota, Attorneys for defendant and appellant.

SEVERSON, Justice.

[¶1.] Eugene Herman Paulson appeals his jury conviction on one count of threatening or intimidating a judicial officer, one count of offering a false instrument for filing, and one count of uttering simulated process. He appeals using the procedure outlined in *State v. Korth*, 2002 S.D. 101, ¶¶ 16 n. 6 & 17, 650.N.W.2d 528, 535 n. 6 & 536. We affirm.

## Background

[¶2.] Since 2001, Paulson has been a pro se party to various civil lawsuits involving a now-defunct business he once owned and operated. These criminal claims arose out of filings submitted by Paulson in 2008 (Case # 08–54) and 2009 (Case # 09–83) foreclosure actions, both brought in Roberts County, by Paulson's and the business's creditor, People's State Bank (Bank). Bank sought to recover collateralized machinery through foreclosure. The Honorable Tony Portra presided over the latter portion of both cases. Judge Portra sought the Supreme Court's assistance in dealing with a large number of Paulson's frivolous filings, including a phony judgment against another judge, produced under the heading of "Our One Supreme Court"—a body of Paulson's own creation we then described as "established outside the sovereign power of any state or the federal government." After we directed Paulson to show cause (Supreme Court Filing # 26075) and received his response, we issued an order requiring Paulson to "pre-clear all documents" he wanted to file with the circuit court.

[¶3.] The cases sat dormant for over a year, but on April 22, 2013, Paulson sought by letter to have attached documents under the heading of "Our One Supreme Court" filed with the circuit court. One of these documents was a "memorandum of law" signed by a "Jury Forman" of a "Seventh Amendment [J]ury" containing various alleged assertions of law. Some of these assertions were highlighted. These highlighted portions purported to show that judges have taken an oath to defend the Constitution of the United States, and judges who make unconstitutional decisions make "war[ ] against that Constitution" and are "guilty of treason and shall suffer death." These passages were followed by authorities allegedly supporting the constitutional existence of a "Seventh Amendment Jury's" ability to try facts in controversy independent of judicial oversight. The memorandum included an admonition that it "be considered by all persons, employed in any Government capacity, when requested to enforce any and all Judgments entered, presented ordered or directed by the (Peoples) OUR ONE SUPREME COURT." Submitted alongside the memo were orders signed by Paulson that allegedly voided the foreclosures. Paulson also submitted an "order to vacate void judgment" allegedly signed by thirteen people comprising a Seventh Amendment "jury/court" and by a fourteenth person titled "appointed justice." The document was affixed with a seal of "Our One Supreme Court—Justices' Court—United States of America."

[¶ 4.] Judge Portra conveyed these documents to the Department of Criminal Investigation (DCI). A DCI search of Paulson's personal computer pursuant to a warrant uncovered Paulson's April 22, 2013 cover letter to Judge Portra and the "Seventh Amendment Jury" memorandum in substantially similar form as the one sent to Judge Portra. On September 20, 2013, a grand jury issued a superseding indictment charging Paulson with one count of threatening or intimidating a judicial officer, SDCL 22–11–15, one count of offering a false instrument for filing, SDCL 22–11–28.1, and one count of uttering simulated process, SDCL 22–12–5. The circuit court denied Paulson's motion to dismiss the indictment on separation of powers, legal justification, excuse, and venue grounds after a hearing on December 19, 2013. The matter was tried to a jury on February 10, 2014, which found Paulson guilty on all three counts. The court sentenced Paulson to a suspended execution of sentence on each count based on various conditions, including that Paulson serve 180 days in the state penitentiary on each of the three counts and that he could not file any documents in federal or state court that were not pre-cleared by the judge or that were "based upon 'Our One Supreme Court,' 'common law court,' '7th amendment grand jury,' 'people's supreme court,' or any other fictitious court, or fictitious judicial process."

[¶ 5.] Paulson, on March 19, 2014, filed a document entitled "Notice of Dismissal of Attorney Mr. Schreiber." In it, he averred that "Mr. Schreiber has refused to represent Mr. Paulson in any way near what he has been requested to do." Counsel for Paulson, Brad Schreiber, attempted to withdraw prior to the filing of the notice of appeal on March 28, 2014. At a hearing on the withdrawal matter, the court suggested instead that Schreiber keep Paulson from violating the terms of his sus-pended execution by screening Paulson's arguments through the filing of a *Korth* brief. In order to assist his client in a difficult circumstance, Schreiber admitted he was going beyond the *Korth* restrictions set forth in *State v. Arabie*, 2003 S.D. 57, ¶ 11, 663 N.W.2d 250, 254–55 (per curiam), and *State v. Bousum*, 2003 S.D. 58, ¶¶ 8–9, 663 N.W.2d 257, 261, which prohibited counsel from briefing matters under *Korth* where he or she deems any of his or her client's claims non-frivolous or arguably meritorious. Schreiber argued that this case was distinguishable on the facts and that he could offer issues he deemed argu-ably meritorious in Paulson's *Korth* brief.

**Analysis**

[¶ 6.] *1. Section A Issues*

[¶ 7.] Schreiber listed what he claimed were non-frivolous issues in Sec-tion A of Paulson's *Korth* brief. Nothing in the record indicates any issues in Sec-tion A were issues Paulson wanted argued. As noted above, case law prohibits listing non-frivolous issues in Section A:

> [T]here should be no "issues the attor-ney believes are meritorious" or "attor-ney issues" in a proper *Korth* brief. This is only logical because, if there are issues in the case that counsel believes are meritorious, counsel should obvious-ly abandon the *Korth* procedure and brief and argue those issues as in any other criminal appeal.

*Arabie*, 2003 S.D. 57, ¶ 10, 663 N.W.2d at 254. Schreiber nevertheless asserted to the circuit court that his situation was so unique that *Arabie* did not apply, to wit: Schreiber had arguably meritorious claims to support Paulson on appeal, but Paulson did not want those claims argued; instead, Paulson wanted claims Schreiber deemed frivolous offered on appeal. That dilem-ma, however, was not meant to be resolved with *Korth*. *See Korth*, 2002 S.D. 101,

¶ 15, 650 N.W.2d at 535 (noting the "tension" with counsel's "duty as an officer of the court (which requires him not to present frivolous arguments)" and "his duty to further his client's interest (which might not permit counsel to characterize his client's claims as frivolous)"). Beyond the normal *Korth* concerns, Paulson did not want Schreiber to make certain arguments, which Schreiber nevertheless presented in Section A of his *Korth* brief.[1]

[¶ 8.] Paulson's distinctive appellate brief resulted from the circuit court's handling of Paulson's motion to proceed on the appeal pro se and Schreiber's motion to withdraw. The circuit court intended to ensure Paulson did not transgress his conditions of probation, which bind him on appeal, *see* SDCL 23A–33–5, and which he would have violated if he filed any documents from an extra-legal authority with the Supreme Court. The court chose to prevent this by filtering, through a *Korth* brief, the arguments Paulson wished to present pro se.

[¶ 9.] Although Schreiber was attempting to assist his client as the circuit court ordered and in good faith, he should have filed the *Korth* brief without explicating

issues only he found meritorious or non-frivolous, as we instructed in *Arabie. See* 2003 S.D. 57, ¶ 10, 663 N.W.2d at 254. Schreiber's Section A therefore does not comply with *Korth* procedure. However, Paulson's claims in Section B of the brief otherwise comport with *Korth* procedure, *see* 2002 S.D. 101, ¶¶ 16 n. 6 & 17, 650 N.W.2d at 535 n. 6 & 536, and are reviewable.[2]

[¶ 10.] *2. Paulson's Claims on Appeal*

[¶ 11.] A. *Whether there were insufficient facts for a jury to convict Paulson for threatening or intimidating Judge Portra.*

[¶ 12.] Paulson contends there were insufficient facts for a jury to convict him on count one. As Paulson had offered a motion for judgment of acquittal at trial and now contends the State did not present sufficient facts to establish his guilt beyond a reasonable doubt, his pro se argument may be construed as demanding review of the denial of a motion for judgment of acquittal.

[¶ 13.] " 'The denial of a motion for judgment of acquittal presents a ques-

---

1. The *Korth*-like brief Schreiber sought to file is unique, but courts have considered, and rejected, somewhat similar *Korth*-like hybrid briefs in cases where a client wants to brief claims on appeal that his or her attorney finds arguably meritorious, as well as claims the attorney finds frivolous. For example, the Third Circuit Court of Appeals rejected the use of such a federal-equivalent (*Anders*) brief. The court found that a "quasi-*Anders* brief" violates an attorney's "ethical obligation to refuse to prosecute a frivolous appeal[,]" *see United States v. Turner*, 677 F.3d 570, 577 (2012) (quoting *McCoy v. Ct. of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436, 108 S.Ct. 1895, 1901, 100 L.Ed.2d 440 (1988)) (internal quotation mark omitted), as well as the "longstanding prohibition on 'hybrid representation,' " *id.* The latter prohibition derives from the fact that " 'a defendant does not have a constitutional right to choreograph

special appearances by counsel[,]' " and that " '[o]nce a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously requests that counsel be silenced.' " *Id.* (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984)).

2. This Court has prescribed refiling of a brief to comport with proper *Korth* procedures in order to remedy any failure, such as this, "to comply with the technical requirements of *Korth*[.]" *Bousum*, 2003 S.D. 58, ¶ 10, 663 N.W.2d at 261. However, refiling appears redundant in this case as Paulson selected the only arguments he wanted to appeal and presented them in Section B of the brief.

tion of law' that we review de novo." *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 14, 772 N.W.2d 117, 122).

> When reviewing sufficiency of the evidence, this [C]ourt[ ] considers the evidence in a light most favorable to the verdict. A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt. We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence.

*State v. Janklow*, 2005 S.D. 25, ¶ 16, 693 N.W.2d 685, 693 (alteration in original) (quoting *State v. Running Bird*, 2002 S.D. 86, ¶ 19, 649 N.W.2d 609, 613) (internal quotation marks omitted).

[¶ 14.] The criminal statute on threatening a judicial or ministerial officer, SDCL 22–11–15, reads in relevant part:

> Any person who, directly or indirectly, utters or addresses any threat or intimidation to any judicial or ministerial officer ... with intent to induce the person either to do any act not authorized by law, or to omit or delay the performance of any duty imposed upon the person by law, or for having performed any duty imposed upon the person by law, is guilty of a Class 5 felony.

"Threat" is not defined in criminal statute, so "we rely on its plain and ordinary meaning." *See Brown v. Hanson*, 2007 S.D. 134, ¶ 13, 743 N.W.2d 677, 681. Black's Law defines "threat" most relevantly as "[a] communicated intent to inflict harm or loss on another or on another's property, esp[ecially] one that might diminish a person's freedom to act voluntarily or with lawful consent[.]" *Black's Law Dictionary* 1708 (10th ed.2014).

[¶ 15.] Paulson contends that the only possible threat to Judge Portra was language contained in the memorandum of law from the "Seventh Amendment Jury." Paulson argues that the document only contained "[c]onstitutional, federal statutory, and case law" and was "intended as an educational document to give the reader an understanding how the law and courts are supposed to view violations of various laws." He then asserts the memorandum was not his, but was created by the Seventh Amendment Jury.

[¶ 16.] Paulson's argument that the memorandum's authorship insulates him from criminal liability is incorrect. Investigators found an unsigned draft of the memorandum on Paulson's computer. Paulson may also "indirectly" threaten a judicial officer by offering another's work and still violate SDCL 22–11–15. *See id.*

[¶ 17.] As for whether the memorandum was educational, and not a threat, the memorandum's logic proceeds by first contending that any judge's action that violates the constitution amounts to "warring against the constitution." These words are taken out of context from a civil rights case where a governor and state legislature claimed to not be bound by the federal court's school desegregation order entered on the basis of the U.S. Supreme Court's holding in *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). *See Cooper v. Aaron*, 358 U.S. 1, 18–20, 78 S.Ct. 1401, 1410, 3 L.Ed.2d 5 (1958). The memo's next step is to conflate such "warring" with treason—a wholly unfounded theory, its reliance on *Cooper* notwithstanding. Some of the other highlighted portions of the memorandum were quotations, again taken out of context, such as the phrase "is guilty of treason and shall suffer death," which lent Paulson's threat gravitas by quoting the feder-

al treason statute, 18 U.S.C. § 2381.[3] Certainly, the cited treason provision is only effective within the court system framework that Paulson eschews. These realities would, in theory, nullify Paulson's "intent to inflict harm" and make his threat meaningless as a matter of law. However, Paulson's history of utilizing extra-legal means to achieve facially legal objectives, as shown in the record, provides sufficient evidence, taken in a light most favorable to the verdict, to make the threat substantial.

[¶ 18.] Rather, what lacks credibility is Paulson's attempt to legitimize the threat by stringing these loose quotations together and claiming he was intending to educate, not threaten, the court. That claim is as absurd as the antecedents relied on by the document to reach its conclusion. The law does not provide that a judge who errs, even on issues of constitutional importance, commits treason. Yet Paulson doubles-down on this threat by asserting in his brief that "[w]e have to hope that [Judge Portra] does not intend to break a law that the [f]ederal [g]overnment would punish him for under 18 U.S.C. § 2381." Viewed in a light most favorable to the verdict, Paulson's memorandum of law contained a veiled death threat intended "to omit or delay" Judge Portra's continued execution of the foreclosure orders. *See* SDCL 22–11–15. Accordingly, the circuit court did not err in denying Paulson's motion for judgment of acquittal as the jury had sufficient facts on which to base its verdict.

[¶ 19.] B. *Whether Paulson offered a false instrument for filing or uttered simulated process.*

■ [¶ 20.] Paulson also argues that, on his remaining two convictions, the only "false" or "simulated" document he could have sought to file with the circuit court

was the order from the "Seventh Amendment Jury" to "vacate the void judgment" declaring the prior presiding judge on the foreclosure cases to have "committed treason" and Bank to have "committed fraud." Paulson declares this order from the "Seventh Amendment Jury," dated March 14, 2011, was valid based on the authorities given in the Jury's memorandum. He thus challenges the sufficiency of the evidence used to convict him for offering a false instrument for filing and for uttering simulated process—claims reviewed, de novo. *See Brim,* 2010 S.D. 74, ¶ 6, 789 N.W.2d at 83.

[¶ 21.] SDCL 22–11–28.1 criminalizes offering a false or forged instrument for filing, and it provides:

Any person who offers any false or forged instrument, knowing that the instrument is false or forged, for filing, registering, or recording in a public office, which instrument, if genuine, could be filed, registered, or recorded under any law of this state or of the United States, is guilty of a Class 6 felony.

Uttering simulated process is a crime under SDCL 22–12–5, which reads:

Any person who, for the purpose of obtaining anything of value, circulates or offers for sale, prints for the purpose of sale or distribution, sends or delivers, or causes to be sent or delivered, any letter, paper, document, notice of intent to bring suit, or other notice or demand which simulates any form of court or legal process or any official demand, notice or other paper of a federal, state, or municipal agency, the intention of which document is to lead the recipient or addressee to believe that it is a genuine court or legal process or official demand, notice, or other paper of a federal, state,

---

3. The record also provides that Paulson made similar threats to another judge and that he

threatened physical violence against the receiver in this case.

or municipal agency, is guilty of uttering simulated process. Uttering simulated process is a Class 1 misdemeanor.

The court instructed the jury that in order to be found guilty, the State must prove beyond a reasonable doubt Paulson's general criminal intent on the false instrument count and his specific intent on the simulated process count.

[¶ 22.] Paulson's argument that the "Seventh Amendment Jury's" order was valid, and therefore not a false instrument or simulated legal process intended to void the foreclosure, lacks any legal support. He attempts to extend the Fifth Amendment grand jury's actual, quasi-independent investigative authority in criminal matters to this "Seventh Amendment Jury"/court's actions in Paulson's two civil foreclosure proceedings. There is no authority to support Paulson's leap of logic. In state-law context, the authority to convene a grand jury rests in the duly constituted courts, none of which countenanced Paulson's Seventh Amendment Jury. *See* SDCL 23A–5–1 ("The circuit court shall order one or more grand juries to be summoned only when it appears *to the circuit judge's satisfaction* that a grand jury is necessary or desirable . . . ." (emphasis added)). This legal reality deprives Paulson of any logical basis for his argument.

[¶ 23.] Furthermore, the sham order Paulson attempted to file rested on an alleged violation of state law: Bank's failure to file a bill of particulars with its foreclosure pleading, per SDCL 44–9–31. The circuit courts alone have original jurisdiction over these types of claims, unless the Legislature should designate limited original jurisdiction "to other courts." *See* S.D. Const. art. V, § 5. This "Seventh Amendment Jury/People's One Supreme Court" was not convened by any authority under state law. Any document generated by it was invalid and anyone intending these documents to have the force of law to induce another to act was committing fraud. *See Black's Law Dictionary* 775 (10th ed.2014) (defining fraud as willful misrepresentation "to induce another person to act"). Paulson claims on appeal that he only submitted this invalid order to Judge Portra for the court to reject it—thus permitting Paulson to remove the case to "[f]ederal [c]ourt on [c]onstitutional grounds"—and that he did not intend to induce Judge Portra to file the document. His claim is contradicted by his cover letter on the order asking Judge Portra to "arrange to have the enclosed documents filed with the Court." It is also contradicted by the pains Paulson took to make the order look official, which included proper formatting, a fabricated seal, a notary endorsement, and seemingly official titles given to its signatories.

[¶ 24.] Therefore, with the facts taken in a light most favorable to the verdict, the order was a false instrument, devoid of authority, yet it mimicked a genuine court order; and Paulson sought to have it filed by Judge Portra in a public office—the circuit court. Accordingly, the jury had sufficient evidence to find that Paulson violated SDCL 22–11–28.1. By those same facts, Paulson also delivered a simulated court process (the order) to Judge Portra, intending the court to view it as genuine, for the purpose of fraudulently recovering title to the collateral machinery which Bank had previously obtained through foreclosure. Thus, there was sufficient evidence for a jury to find that Paulson violated SDCL 22–12–5.

**Conclusion**

[¶ 25.] Despite an error in Section A of the *Korth* brief filed on Paulson's behalf, the unique posture of this case permits us to review Paulson's Section B claims of error, each of which fails on the sufficiency

of the evidence that supports the jury's guilty verdicts. We affirm.

[¶ 26.] GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, and KONENKAMP, Retired Justice, concur.

[¶ 27.] KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.