#27510-vacate in pt and aff in pt-JMK
**2017 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

        v.

ANNETTE MARIE BOSWORTH,               Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                                              and appellee.


DANA L. HANNA
Rapid City, South Dakota                      Attorney for defendant
                                              and appellant.

* * * *

ARGUED NOVEMBER 8, 2016
OPINION FILED **07/19/17**

#27510

KERN, Justice

[¶1.]        In order to get her name placed on the ballot for election to the United States Senate, Annette Bosworth submitted nominating petitions containing voters' signatures to the Secretary of State. On six of the petitions, Bosworth signed a sworn verification that she personally circulated the petitions. An investigation revealed she was not the circulator, and the State charged Bosworth with six counts of perjury and six counts of offering false or forged instruments for filing. A jury convicted Bosworth on all counts, and she appeals. We vacate the convictions for perjury but affirm the remaining convictions.

## BACKGROUND

[¶2.]        In 2014, Bosworth ran for the Republican nomination for a seat in the United States Senate. Bosworth was a physician practicing medicine in Sioux Falls, South Dakota. In order for her name to appear on the ballot, state law required Bosworth to submit nominating petitions containing at least 1,995 voters' signatures by March 25, 2014, to the Office of the Secretary of State.

[¶3.]        The State Board of Elections is authorized to promulgate rules regarding the procedure for acceptance and verification of petitions and the contents of petition forms. SDCL 12-1-9. A *petition* is defined as a form that is prescribed by the State Board of Elections, identifies the position the candidate is seeking, and contains the declaration of candidacy and the verification of the circulator. SDCL 12-1-3(8). Pursuant to Administrative Rule of South Dakota (ARSD) 5:02:08:00.03, the circulator's verification must contain the following language: "I, under oath, state that I circulated the above petition, that each signer personally signed this

-1-

petition in my presence, and that either the signer or I added the printed name, the residence address of the signer, the date of signing, and the county of voter registration."

[¶4.] Bosworth signed the circulator's verification on six petitions. She did not, however, personally circulate these petitions, and none of the voters who signed the petitions signed in her presence. The voters signed the six petitions in January 2014 while Bosworth was on a medical-aid mission in the Philippines. After her return to the United States, Bosworth signed the petitions and verified them before a notary between January 20, 2014, and March 24, 2014.

[¶5.] On March 25, 2014, Bosworth's campaign consultant Patrick Davis delivered a number of petitions, including the six petitions bearing Bosworth's verifications as circulator, to the Office of the Secretary of State. Although Bosworth did not personally file the petitions, she directed Davis to do so.

[¶6.] The Secretary of State conducted a signature-validation process to determine whether each petition had been properly completed. After reviewing the petitions, the Secretary of State certified them as having met the legal requirements for valid petitions. Accordingly, the Secretary counted the signatures on the petitions and placed Bosworth's name on the ballot. Bosworth subsequently lost in the Republican primary.

[¶7.] Following the election, the Division of Criminal Investigation conducted an investigation into allegations that some of Bosworth's petitions had been filed upon a false oath. On June 17, 2014, the State indicted Bosworth on six

counts of perjury and six counts of offering false or forged instruments for filing. Bosworth pleaded not guilty to all charges.

[¶8.]       On May 18, 2015, Bosworth's case proceeded to a jury trial.  Bosworth admitted she did not personally circulate the six petitions but denied she committed perjury or filed false or forged instruments with the Secretary of State.  Bosworth claimed she misunderstood the instructions for the circulator's verification, mistakenly believing she was verifying that the signers were registered South Dakota Republicans and that their signatures were genuine.  Additionally, Bosworth testified that her misconceptions were based on legal advice she received from Joel Arends, the lawyer for her campaign.  Arends, however, testified for the prosecution and denied Bosworth's claims, asserting he explicitly told her that she could not sign the circulator's verification for petitions she did not personally circulate.

[¶9.]       Of the six petitions Bosworth verified as the circulator, only one contained nongenuine voters' signatures.  This petition contained genuine signatures as well as signatures forged by the leader of a Hutterite religious colony on behalf of several of its members.  The leader added these signatures under the mistaken belief that he had authority to do so as the colony's leader.  It is undisputed that Bosworth neither told the leader to forge the signatures nor learned of the forgeries until after she was indicted.

[¶10.]      Bosworth moved for a judgment of acquittal on the following grounds: (1) signing a circulator's verification on a nominating petition and submitting it for filing is not done as part of a *state or federal proceeding or action* under SDCL

22-29-1; (2) a false verification on a nominating petition does not make the petition a *false or forged instrument* under SDCL 22-11-28.1; and (3) there was no evidence that Bosworth personally offered or filed any of the six petitions in question. The circuit court denied the motion. On May 27, 2015, the jury found Bosworth guilty of six counts of perjury and six counts of offering false or forged instruments for filing. The circuit court sentenced Bosworth to two years imprisonment, which was suspended on the condition that she spend three years on probation and complete 500 hours of community service. Bosworth appeals her convictions, alleging the circuit court erred by denying her motion for judgment of acquittal, and raises the following issues:

1.    Whether signing a circulator's verification on a nominating petition and submitting it for filing with the Secretary of State is done in a *state or federal proceeding or action* under SDCL 22-29-1.

2.    Whether submitting a nominating petition with a circulator's verification signed by someone other than the person who circulated the petition is offering a *false or forged instrument* under SDCL 22-11-28.1.

3.    Whether the evidence presented at trial was sufficient to support Bosworth's convictions for offering false or forged instruments for filing.

## STANDARD OF REVIEW

[¶11.]    Statutory interpretation is a question of law, which we review de novo. *Upell v. Dewey Cty. Comm'n,* 2016 S.D. 42, ¶ 6, 880 N.W.2d 69, 71. The denial of a motion for judgment of acquittal is also a question of law reviewed de novo. *State v. Brim,* 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83. When reviewing whether evidence is sufficient to sustain a conviction, we "consider[] the evidence in a light most favorable to the verdict. A guilty verdict will not be set aside if the [S]tate's

evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt. We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence." *State v. Janklow*, 2005 S.D. 25, ¶ 16, 693 N.W.2d 685, 693.

**DECISION**

1. *Whether signing a circulator's verification on a nominating petition and submitting it for filing with the Secretary of State is done in a* state or federal proceeding or action *under SDCL 22-29-1.*

[¶12.] Bosworth argues that a statement made in the circulator's verification on a nominating petition and submitted to the Secretary of State is not done in a *proceeding or action* under SDCL 22-29-1. *Proceeding* and *action* are not defined in the statute. Bosworth claims the words are terms of art that should be interpreted in line with their established legal meanings. According to Bosworth, *proceeding* and *action* involve matters occurring in judicial or quasi-judicial adjudicatory settings. Bosworth argues that other statutes in the South Dakota Code define *proceeding* and *action* in a way that is consistent with this approach. Because she did not sign the petitions and submit them to the Secretary of State as part of a judicial or quasi-judicial proceeding, Bosworth submits that interpreting SDCL 22-29-1 to criminalize her conduct defies legislative intent.

[¶13.] The State argues that the phrase *proceeding or action* includes more than judicial and quasi-judicial settings, and that Bosworth's narrow interpretation ignores the Legislature's revision to the statute in 2002. The 2002 revision replaced *cases* with *state or federal proceeding or action*, which the State claims broadened the scope of the statute. The State submits that a signed, written oath presented as

-5-

part of a filing before an administrative agency constitutes a statement made in a *proceeding*.

[¶14.]    An act of perjury is defined in SDCL 22-29-1 to occur when:

> Any person who, having taken an oath to testify, declare, depose, or certify truly, before any competent tribunal, officer, or person, in any *state or federal proceeding or action* in which such an oath may by law be administered, states, intentionally and contrary to the oath, any material matter which the person knows to be false . . . .

(Emphasis added.)

[¶15.]    Although neither *proceeding* nor *action* is defined in SDCL chapter 22-29, the Legislature has defined the words numerous times throughout the code. *See* SDCL 15-1-1(1); SDCL 15-12-20(1); SDCL 15-24-5; SDCL 19-13A-2(7); SDCL 21-1-15(1); SDCL 37-5B-1; SDCL 47-1A-140(32); SDCL 47-1A-850. "Whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." SDCL 2-14-4.

[¶16.]    The Legislature has consistently defined the word *action* to indicate a matter involving an adjudication. Under SDCL 15-1-1(1), "[a]n action is an ordinary proceeding *in a court of justice*, by which a party prosecutes another party for the enforcement, determination, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Every other remedy is a special proceeding[.]" (Emphasis added.) Under SDCL 15-12-20(1), the word *action* means "any action or special proceeding *in the trial court*, whether civil or criminal or quasi-criminal[.]" (Emphasis added.) Under SDCL 21-1-15(1), an *action* means "any civil lawsuit or action in contract or tort for damage or indemnity

-6-

brought against a construction professional to assert a claim for damage or the loss of use of real or personal property caused by a construction defect." Under SDCL 37-5B-1, the word *action* means "any complaint, cross claim, counterclaim, and third-party complaint in a judicial action or proceeding, and their equivalent in an administrative action or arbitration[.]" Bosworth's submission was not done as part of an adjudication and was therefore not made as part of an *action*.

[¶17.] The use of the word *proceeding* throughout the code, however, reveals more diverse definitions. Under SDCL 15-24-5, prescribing Supreme Court procedure, the term *proceeding* "includes all public appellate arguments, hearings, or other proceedings before the Supreme Court, except those specifically excluded by the rules." In the Uniform Mediation Act, the word *proceeding* is defined in SDCL 19-13A-2(7) to mean: "(A) a judicial, administrative, arbitral, or other adjudicative process, including related pre-hearing and post-hearing motions, conferences, and discovery; or (B) a legislative hearing or similar process." Under SDCL 47-1A-140(32), found in the Business Corporation Act, the word *proceeding* "includes civil suit and criminal, administrative, and investigatory action[.]" And under the same Act, in SDCL 47-1A-850, the word *proceeding* means "any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative and whether formal or informal." Although the definitions of *proceeding* vary, at a minimum, they include

#27510

an adjudicatory process or hearing before a tribunal or an investigation taken under its authority.[1]

[¶18.] As there is no evidence that the Legislature intended a contrary intention or different meaning for *proceeding* in SDCL 22-29-1, we look to these statutory definitions for guidance. *State v. Sondreal*, 459 N.W.2d 435, 439-40 (S.D. 1990). We, however, also consider that the Legislature amended SDCL 22-29-1 in 2002. 2002 S.D. Sess. Laws ch. 113, § 1. The full title of the amending legislation was: "An Act to *change the definition* and venue of perjury prosecutions *and to provide for the verification of certain information on certain state applications or other documents*." 2002 S.D. Sess. Laws ch. 113 (emphasis added). As the title suggests, the act consisted of three parts. The Legislature first changed the definition of perjury by deleting the words *of the cases* and replacing them with *state or federal proceeding or action*. The Legislature also added a new code section relating to venue. In the third section, the Legislature added a new code section defining a distinct form of perjury criminalizing the false verification of information on a petition submitted to the State:

> Any person who submits any *petition* . . . for the purpose of obtaining benefits or any other privilege from the State of South Dakota shall verify, under oath, that such petition, application, or information is true and correct. However, it is sufficient if the claimant, in lieu of verification under oath, signs a statement printed or written thereon in the form following: "I declare and affirm under the penalties of perjury that this claim (petition, application, information) has been examined by me, and to the best of my knowledge and belief, is in all things true and

---

1. At trial, the jury received Instruction 44, which defined *proceeding* as "[a]ny act or event that takes place in a progression of a lawsuit, or in the regular business of a court or other official body."

> correct." *Any person who signs such statement as provided for in this section, knowing the statement to be false or untrue, in whole or in part, shall be guilty of perjury.*

2002 S.D. Sess. Laws ch. 113, § 3; *see also* SDCL 22-29-9.1.[2]

[¶19.]    Notably, SDCL 22-29-9.1 does not contain a proceeding-or-action requirement, and to interpret *proceeding* in SDCL 22-29-1 to include the submission of a falsely verified petition would render SDCL 22-29-9.1 superfluous. This we will not do as "[w]e assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage." *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 13, 878 N.W.2d 406, 411. We, therefore, conclude that Bosworth's submission of a nominating petition to the Secretary of State was not done in a *proceeding* within the meaning of the statute.

[¶20.]    It is possible that the 2002 amendment broadened the application of SDCL 22-29-1.[3] But we reject the State's view that the legislation expanded SDCL 22-29-1 to cover more than adjudicatory processes or hearings before tribunals or investigations taken under their authority. Signing a nominating petition under a written oath before submitting it to a state authority is not a statement made in a *proceeding or action* under SDCL 22-29-1. Because the State failed to prove an element of the offense, the circuit court erred in denying Bosworth's motion for

---

2.    In 2005, the Legislature amended the statute, changing the phrase "shall be" (guilty of perjury) to "is."

3.    Although we interpret the meaning of the words *actions* and *proceedings*, we do not analyze the scope of the word *cases*. Without doing so, we cannot determine that the scope of the words *actions or proceedings* is broader.

judgment of acquittal on the perjury charges, and we vacate her convictions for

violating SDCL 22-29-1.

> 2.  *Whether submitting a nominating petition with a circulator's verification signed by someone other than the person who circulated the petition is offering a* false or forged instrument *under SDCL 22-11-28.1.*

[¶21.]    The State convicted Bosworth of six counts of offering a false or forged

instrument for filing.  SDCL 22-11-28.1 provides:

> Any person who offers any false or forged instrument, knowing that the instrument is false or forged, for filing, registering, or recording in a public office, which instrument, if genuine, could be filed, registered, or recorded under any law of this state or of the United States, is guilty of a Class 6 felony.

Bosworth argues that the circuit court erred by denying her motion for judgment of

acquittal because "untrue statements in a voters' petition do not make the petition a

false instrument if the petition itself is not counterfeit, inauthentic, and devoid of

lawful authority."[4]  In her view, the use of *false or forged* in the statute suggests

that *false* should be interpreted similarly to *forged* pursuant to the canon of

interpretation *noscitur a sociis*, which means "a word is known by the company it

keeps."  *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S. Ct. 1579, 1582, 6 L.

Ed. 2d 859 (1961).  Bosworth contends that the petitions "were in fact what they

appeared to be: petitions signed by voters nominating a candidate for public office."

Because the falsity at issue involves a false fact stated in each petition, "not in the

---

4.    SDCL chapter 22-11 does not define the word *instrument*.  Bosworth disputes whether "false statements in a genuine legal document make that document a false instrument," not whether a nominating petition is an *instrument* under SDCL 22-11-28.1.  We therefore assume, without deciding, that it is an *instrument* for purposes of this opinion.

genuineness of the petition[s] [themselves]," Bosworth claims the petitions are not false instruments.

[¶22.] In response, the State submits that the petitions containing untruthful verifications are *false instruments* under SDCL 22-11-28.1. The State relies on *Reaser v. Reaser*, 2004 S.D. 116, 688 N.W.2d 429, *State v. Hayes*, 37 S.D. 530, 159 N.W. 108 (1916), and several other cases to support its position that the presence of a false statement renders an instrument false. The State also contends that under ARSD 5:02:08:00.01(1)(b), the petitions at issue were improperly completed, so they were invalid and not genuine as Bosworth claims. Finally, the State asserts that "Bosworth's notion that a document must be literally *forged* to be a 'false instrument' under SDCL 22-11-28.1" contravenes the statute's primary purpose of protecting the integrity of public records.

[¶23.] Bosworth first argues that an instrument is false if it is not genuine and that it is not genuine if it is forged or counterfeit. Although the definitions of *false* and *forged* suggest some overlap, they are distinct concepts. Because SDCL 22-11-28.1 uses *or* to cover two types of instruments, those that are false and those that are forged, the linguistic canon of *noscitur a sociis* is inapplicable in this case. "The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately." 1A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 21:14 (7th ed.), Westlaw (database updated November 2016). SDCL 22-39-36 defines the crime of forgery: "Any person who, with intent to defraud, falsely makes, completes, or alters a written instrument of any kind, or passes any forged instrument of any kind is

guilty of forgery." *False* is defined as "1. Untrue. 2. Deceitful; lying. 3. Not genuine; inauthentic . . . . 4. Wrong; erroneous." *Black's Law Dictionary* (10th ed. 2014). The definition of *forgery* includes *falsely*, but *forgery* only covers a certain type of falsehood: falsity in execution. "Where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery." *Gilbert v. United States*, 370 U.S. 650, 658, 82 S. Ct. 1399, 1404, 8 L. Ed. 2d 750 (1962) (quoting *Marteney v. United States*, 216 F.2d 760, 763-64 (10th Cir. 1954)).

[¶24.]     The distinction made by the Supreme Court of the United States in *Gilbert* is consistent with our holding in *State v. Hayes*. In *Hayes*, the defendant was a corporate officer of a bank who signed and issued written evidence of $2,000 in debt deposited by a relative, but in reality, the defendant knew only $10 was deposited. 37 S.D. at 532, 159 N.W. at 109. The State charged Hayes with forgery, which at the time prohibited bank officers from "willfully sign[ing]. . . any false or fraudulent bond or other evidence of debt[.]" *Id.* at 533, 159 N.W. at 109. After a conviction, the circuit court granted Hayes's motion in arrest of judgment, but the State appealed to this Court. *Id.*

[¶25.]     On appeal, Hayes argued that "because the instrument was the genuine act of respondent[,] it was not a false instrument; that there is a distinction between a false instrument and one which contains false statements; and that the statute does not cover the latter case." *Id.* at 534, 159 N.W. at 110. We acknowledged "a distinction between the false making of an instrument and the making of a false instrument" but held that the statute related "to the making or issuing of a false or fraudulent instrument." *Id.* at 534-35, 159 N.W. at 110.

Accordingly, we reversed the circuit court's decision because "the willful issuing by a bank officer of a certificate of deposit in an amount in excess of the actual deposit renders the instrument a false evidence of debt within the meaning of [the statute]." *Id.* at 535, 159 N.W. at 110. We also held that if someone other than an officer of the bank had "signed the name of John Hayes [(the relative)] to the certificate of deposit" and issued the certificate, "he would have been guilty of forgery in the first degree . . . but . . . not" guilty under this corporation-specific forgery statute. *Id.*

[¶26.] The takeaways from *Hayes* are that falsely executing an instrument with the name of another was forgery and that issuing an instrument containing an untrue statement of fact was sufficient to render the instrument "false or fraudulent." *Id.* The petitions in this case were not forgeries because Bosworth's executions of the circulator's verifications were genuine—she signed her own name. The falsity of the petitions stems from Bosworth's misrepresentations of fact: contrary to Bosworth's verifications, voters did not sign the petitions in her presence. Thus, the petitions contain untrue statements of fact and, accordingly, are *false instruments*.[5]

---

5. The concurrence correctly points out that under SDCL 22-11-28.1, "a 'false instrument' must be one that is not 'genuine.'" *Infra* ¶ 42. To conclude, however, that Bosworth's petitions are *false instruments* because they "lacked the qualities of what nominating petitions purport to be or to have" conflates distinct concepts. *Id.* An instrument that is not genuine is not necessarily a false instrument. In SDCL 22-11-28.1, the Legislature determined that neither false instruments nor forged instruments are genuine. Both types of instruments, however, have more precise meanings than being nongenuine. Although the petitions were not what they purported to be, what made them false instruments is that they each contained an untrue statement of fact.

[¶27.]     Prohibiting the knowing filing of instruments containing false statements of fact also comports with SDCL 22-11-28.1's vital purpose of ensuring that filings with state offices are truthful.[6]  The presence of false facts in publicly filed documents poses serious concerns regarding the integrity of public records and legal processes.  The regulations governing nominating petitions exist to ensure "the integrity of the circulation process, and in turn, the political process." *Cunningham v. Schaeflein*, 969 N.E.2d 861, 876 (Ill. App. Ct. 2012).  Further, SDCL 22-11-28.1's purpose underscores what its text suggests: that fraud upon the government may be perpetrated by knowingly filing false instruments as well as forged instruments, and that both types of documents are nongenuine and not properly filed with the State.

[¶28.]     Additionally, *Reaser v. Reaser* supports the proposition that an instrument containing an untrue statement of fact is a false instrument.  In that case, we discussed whether the filing of a stipulation containing a false statement about a child-support obligation could constitute falsification of evidence in violation of SDCL 22-11-22, a statute akin to SDCL 22-11-28.1.  *Reaser*, 2004 S.D. 116, ¶ 20, 688 N.W.2d at 435-36.  SDCL 22-11-22 provided: "Any person who prepares any *false* book, paper, record, *instrument in writing*, or other matter or thing *with intent* to produce it or allow it to be produced as *genuine* in any trial, proceeding, inquiry, or investigation authorized by law, is guilty of a Class 6 felony."  (Emphasis

---

6.     SDCL 22-11-28.1 includes the element of scienter.  Any violation must be knowing.

added.)[7] The stipulation purported to provide for a child-support obligation, but the parties had privately entered into a separate agreement, which disavowed any such obligation. *Reaser*, 2004 S.D. 116, ¶¶ 4-5, 688 N.W.2d at 431. We held that "[a] reasonable person could conclude that under the facts of this case, the making of the . . . stipulation was the preparation of a false instrument made with intent to produce it or allow it to be produced as genuine in a proceeding authorized by law." *Id.* ¶ 20, 688 N.W.2d at 435-36. The stipulation was presumably truthful and genuine in other respects, but the untrue statement of fact regarding the child-support obligation was sufficient to render the stipulation a false instrument in violation of a criminal statute with elements similar to SDCL 22-11-28.1.

[¶29.]     Although the State also relies upon *State v. Paulson*, 2015 S.D. 12, 861 N.W.2d 504, we find the case inapposite. In *Paulson*, the criminal conduct involved filing with the circuit court phony orders from an illusory court. *See id.* ¶¶ 3, 23, 861 N.W.2d at 505, 510. Arguably, the orders might have been false as well as forged, but we neither defined nor differentiated the two terms. Rather, we discussed the nature of the orders and simply concluded that, "with the facts taken in a light most favorable to the verdict, the order was a false instrument, devoid of

---

7.     The crime of falsification of evidence has been transferred from SDCL 22-11-22 to SDCL 22-12A-16. The wording of the statute remains the same. Notably, SDCL 22-12A-15 defines the crime of offering *forged* or fraudulent evidence: "Any person who, in any trial, proceeding, inquiry, or investigation authorized by law, offers in evidence as genuine, any book, paper, document, record, or other instrument in writing, knowing that it has been forged or fraudulently altered, is guilty of a Class 5 felony." Again, the Legislature has demonstrated its ability to differentiate between false and forged instruments by creating different crimes prohibiting the offering of two types of nongenuine instruments: those that are false and those that are forged.

authority, yet it mimicked a genuine court order[.]" *Id.* ¶ 24, 861 N.W.2d at 510. This statement was not intended as a definition of *false instrument*. It is worth noting, however, that we explicitly rejected Paulson's contention that the order he submitted "was valid, and therefore not a false instrument[,]" because we determined the order lacked "any legal support." *Id.* ¶ 22, 861 N.W.2d at 510.

[¶30.] Bosworth makes a similar argument as the defendant in *Paulson*: she claims an instrument must be "inauthentic and devoid of legal authority" to be a *false instrument* under SDCL 22-11-28.1. In support of this assertion, Bosworth relies on *State v. Jones*, 218 P.3d 1012 (Ariz. Ct. App. 2009), a decision of the Arizona Court of Appeals. Like in this case, the defendant in *Jones* "falsely verified that signatures on [nominating] petitions were made in his presence," and he was prosecuted under a statute nearly identical to SDCL 22-11-28.1. *Jones*, 218 P.3d at 1013-15. The *Jones* court held the petitions were not false instruments because they were not "counterfeit, inauthentic or otherwise not genuine[.]" *Id.* at 1013.

[¶31.] We are unpersuaded by this reasoning as in our view Bosworth's untrue statements of fact rendered each petition a false instrument. Bosworth signed the circulator's verifications under oath, representing that she circulated each petition and that "each signer personally signed this petition in my presence[.]" Her verifications were untrue statements of fact. Knowing the instruments were false, she then caused them to be filed with the Secretary of State in violation of SDCL 22-11-28.1. The circuit court did not err by denying Bosworth's motion for judgment of acquittal.

>    3.     *Whether the evidence presented at trial was sufficient to
>            support Bosworth's convictions for offering false or forged
>            instruments for filing.*

[¶32.]        Bosworth argues that no rational jury could have found her guilty of violating SDCL 22-11-28.1 "because it was undisputed that she did not offer or file any of the petitions in question." Ashley Klapperich, who was working at the front desk in the Secretary of State's Office when the petitions were delivered, testified at trial that Bosworth was not present at that time. Based on this testimony, Bosworth moved for a judgment of acquittal, but the circuit court denied the motion, stating, "I think it's clear that [the petitions] were filed if not directly by her, certainly on her behalf and by her agents." Bosworth argues the jury instructions did not include an instruction on vicarious liability. Instead, the jury instructions asked the jury to determine whether the "defendant knowingly offered a false or forged instrument for filing[.]" Because the jury was bound to apply the law they were given, Bosworth argues they could not find that she *offered* the petitions for filing.

[¶33.]        In response, the State argues the evidence presented at trial was sufficient to sustain Bosworth's convictions under SDCL 22-11-28.1. The State relies on Bosworth's admission that as a candidate, she received and read the written instructions regarding nominating petitions. Other testimony at trial established that Bosworth was aware that she could not verify petitions she did not personally circulate. Further, the State emphasizes that "Bosworth admitted that [Patrick] Davis filed the petitions for her at her direction."

[¶34.]      From our review of the record, the evidence presented at trial is sufficient to sustain Bosworth's convictions under SDCL 22-11-28.1. The petitions were false instruments (Bosworth improperly signed the circulator's verifications), they were presented for filing in a public office (the Office of the Secretary of State), and they could be filed with the Office of the Secretary of State if they were genuine. The evidence established that Bosworth knew the instruments were false when she offered them. Arends, Bosworth's campaign's lawyer, testified that he explicitly warned her to not verify petitions she did not personally circulate. The Secretary of State also provided Bosworth with written circulating instructions, which explained that signatures on a petition had to be personally witnessed by the circulator. Bosworth testified at trial that she was sure she read these instructions.

[¶35.]      The remaining issue is whether the evidence supports the jury's finding that Bosworth *offered* the petitions. Although Bosworth did not personally present the petitions to the Office of the Secretary of State, she caused Patrick Davis, a campaign consultant, to deliver them.[8] Bosworth's contention that the jury

---

8.      Bosworth testified at trial, and the following colloquy occurred during cross-examination by the State:

> **Q:** Now, you asked Patrick Davis to take the petitions to Pierre for you, correct?
>
> **A:** Asked? It was part of Patrick's job. It was part of the campaign's duties.
>
> **Q:** You caused those petitions to be delivered to Pierre instead of delivering them yourself because you had patients to see, correct?
>
> **A:** I saw patients on Tuesday, the delivery date, yes.
>
> **Q:** So you caused the petitions to be delivered to Pierre by somebody else?
>
> **A:** I caused it? Sure.

could not find that she *offered* the petitions because they were not instructed on vicarious liability is misplaced. Vicarious liability, also known as the doctrine of respondeat superior, provides that a principal or employer may be held responsible for "the employee's or agent's wrongful acts committed within the scope of the employment or agency," under theories of tort or contract law. *Bernie v. Catholic Diocese of Sioux Falls*, 2012 S.D. 63, ¶ 8, 821 N.W.2d 232, 237; *see also* SDCL 59-6-9 (setting forth when a principle is liable to third persons for the negligence or wrongful acts of his agent); *Kirlin v. Halverson*, 2008 S.D. 107, ¶¶ 11-27, 758 N.W.2d 436, 444-48 (explaining and applying the law of vicarious liability). The law of vicarious liability is inapplicable in this context. An instruction on the law of agency, however, might have been helpful. The law of agency is broader than vicarious liability, and an agency instruction would include the specific aspects of a legal relationship that would allow Bosworth to be bound by the actions of her agents. *See* SDCL 59-1-1 ("Agency is the representation of one called the principal by another called the agent in dealing with third persons.").

[¶36.]    Bosworth did not object to the jury instructions on these grounds or propose instructions of her own on this issue, so "the jury instructions [are] the law of the case," *see Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 20, 780 N.W.2d 507, 514, and we must merely decide whether the evidence was sufficient to show she *offered* false instruments. Importantly, the statute does not include language requiring Bosworth to *personally* offer the false instruments, and the jury

was instructed in accordance with the elements of the statute.[9] And several other courts have found that "the use of an intermediary to file a false instrument with a public office will not insulate a person from liability." *People v. Freda,* 817 P.2d. 588, 593 (Colo. Ct. App. 2002) (holding that psychiatrist with knowledge of falsehood who directed staff to submit forms to Medicaid for payment on his behalf *offered* instruments within meaning of statute); *see also People v. Bel Air Equip. Corp.,* 346 N.E.2d 529, 533 (N.Y. 1976) (holding that delivery of vouchers to DOT by employees constituted a *filing* which could be attributed to employer).  Even without an agency instruction, a reasonable jury could have found that Bosworth's directive to Patrick Davis was sufficient to show she *offered* the petitions for filing.  To hold otherwise, as the court noted in *Freda*, would "defeat the statute's purpose by granting immunity to any defendant so long as he persuaded an intermediary to mail or present the false instrument to the public office."  817 P.2d at 593.  We will

---

9.      Jury Instruction No. 25 provided:

> Any person who knowingly offers a false or forged instrument for filing, registering, or recording in a public office, which instrument, if genuine, could be filed, registered or recorded under any law of this state or of the United States is guilty of a crime.

Jury Instruction No. 26 provided:

> The elements of the crime of offering a false instrument for recording, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:
>
> 1.  The defendant knowingly offered a false or forged instrument for filing, registering or recording in a public office.
>
> 2.  The instrument, if genuine, could be filed, registered or recorded under a law of this state.

not disturb the jury's verdict as there was sufficient evidence for the jury to conclude that Bosworth knowingly offered the false instruments for filing.

## CONCLUSION

[¶37.] The circuit court erred by denying Bosworth's motion for judgment of acquittal regarding her perjury convictions. Submitting a petition that was certified under a written oath to a state agency to qualify for an election is not part of a *proceeding or action* under SDCL 22-29-1. Accordingly, we vacate Bosworth's perjury convictions. The circuit did not err, however, by denying Bosworth's motion for judgment of acquittal on the remaining convictions for filing false or forged instruments. A petition is false under SDCL 22-11-28.1 when it contains a circulator's verification signed by someone other than the circulator. Finally, the evidence presented at trial is sufficient to sustain Bosworth's convictions under SDCL 22-11-28.1, and they are affirmed.

[¶38.] GILBERTSON, Chief Justice, SEVERSON, Justice, and WILBUR, Retired Justice, concur.

[¶39.] ZINTER, Justice, concurs in part and concurs in result in part.

ZINTER, Justice (concurring in part and concurring in result in part).

[¶40.] I join the Court's opinion on issue one (perjury) and issue three (sufficiency of the evidence). I concur in result on issue two (false instruments).

[¶41.] On issue two, the question is whether the nominating petitions at issue were false instruments. Under SDCL 22-11-28.1, a "false instrument" must be one that is not "genuine." *Id.* (prohibiting the offering of a "false . . . instrument . . . for

filing, . . . which instrument, *if genuine*, could be filed" (emphasis added)). A thing is genuine if it is "authentic or real" or if it has "the quality of what a given thing purports to be or to have"; a genuine instrument is also one that is "free of forgery or counterfeiting." *Black's Law Dictionary* (10th ed. 2014). There is no claim here that Bosworth's petitions were forged or counterfeit. Therefore, Bosworth could be convicted of filing a false instrument under SDCL 22-11-28.1 if her petitions lacked the qualities of what nominating petitions purport to be or to have.

[¶42.] Bosworth's petitions were not what they purported to be because Bosworth verified petitions as the circulator even though they had been circulated by someone else. Nor did they have the qualities of what nominating petitions purport to have because they did not contain the signatures of voters the circulator obtained. That type of falsehood was more than just an untrue statement of fact. Like the falsehood in *State v. Hayes*, 37 S.D. 530, 534-35, 159 N.W. 108, 109-10 (1916), Bosworth falsified the very essence of what the petitions purported to represent. *See Larson v. Hazeltine*, 1996 S.D. 100, ¶ 23, 552 N.W.2d 830, 836 (noting that one of the purposes of the circulator's verification is "to allow potential challengers to contact the circulators to verify the signatures"). Because Bosworth's statements were materially false, the petitions were not genuine, which rendered them false instruments within the meaning of SDCL 22-11-28.1. I would hold that the petitions were false instruments for these reasons alone.

[¶43.] I cannot join the Court's additional analysis suggesting that documents become "false instruments" merely because they contain some "untrue statements of

fact." *Supra* ¶¶ 26, 31. SDCL 22-11-28.1 requires more: the document must not be "genuine."

[¶44.]	I also do not agree with the Court's reliance on two cases. First, in my view, *Reaser v. Reaser* is not authoritative here because in that case, we merely stated in dicta that a divorce stipulation "could conceivably violate SDCL 22-11-22." 2004 S.D. 116, ¶ 20, 688 N.W.2d 429, 435. We never analyzed the meaning of "false instrument," much less concluded that the stipulation was in fact a "false instrument." Second, the Court's opinion stretches *Gilbert v. United States* beyond its holding. In that case, the Supreme Court only concluded that false statements do not create a forgery. *Gilbert v. United States*, 370 U.S. 650, 658-59, 82 S. Ct. 1399, 1404, 8 L. Ed. 2d 750 (1962). Nothing in *Gilbert* supports the proposition that an instrument containing untrue statements is a "false instrument."